STATE, Respondent, vs. GOLDEN GUERNSEY DAIRY CO-
OPERATIVE and others, Appellants.*

*May 5—June 6, 1950.*

* Motion for rehearing denied, with $25 costs, on September 6, 1950..

258

For the appellants there were briefs by *Bender, Trump & McIntyre* and *Walter H. Bender,* all of Milwaukee; *Lowry & Hunter* and *Richard N. Hunter,* all of Waukesha, for the Golden Guernsey Dairy Co-operative; *Sidley, Austin, Burgess & Harper* and *Howard Neitzert* and *John R. Taylor,* all of Chicago, Illinois; *Miller, Mack & Fairchild* and *Steven E. Keane,* all of Milwaukee, for the Borden Company; *Snyder, Chadwell & Fagerburg* and *John T. Chadwell* and *Victor P. Kayser,* all of Chicago, Illinois; *Zimmers, Randall & Zimmers* and *Clifford A. Randall,* all of Milwaukee, for the Luick Dairy Company; *Edwin J. Gross* of Milwaukee, for the Dairy Distributors, Inc.; *Kleczka & Steinhilber* and *Clarence D. Steinhilber,* all of Milwaukee, for the Blochowiak Dairy Company; *Delbert H. Schmahl* of Milwaukee, for the Clover Lane Dairy Co-operative; *Elmer A. Kletzien* of Menomonee Falls, for the Gehl Guernsey Farms, Inc.; *Raymond J. Moore* of Milwaukee, for the Layton Park Dairy Company; *John H. Regan* of Milwaukee, for the Wilke Dairy

Company; and *T. Fred Baker* of Milwaukee, for the Emmer Bros. Dairy; and oral argument by *John T. Chadwell, John R. Taylor,* and *Steven E. Keane.*

For the respondent there were briefs by the *Attorney General, Leonard Bessman,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county, and oral argument by *Mr. Stewart G. Honeck,* deputy attorney general, and *Mr. Bessman.*

BROWN, J. The complaint to which the defendants have severally demurred and which is now here for review alleged that the defendants in violation of the provisions of sec. 133.01, Stats. 1947, illegally combined and conspired with intent to restrain competition in the retail and wholesale price of fluid milk in Milwaukee county, and by such combination and conspiracy actually did restrain competition and fixed and controlled the price of such milk. It further alleged that the combination and conspiracy consisted of an oral agreement among the defendants, entered into at a date unknown and continuing to the present, to charge noncompetitive prices and to notify one another of the amount and date of any prospective change in price in order to prevent competition and to fix and maintain uniform prices. It further alleged that such combination, conspiracy, and agreement is to be implied wholly from the conduct of the defendants in that during October, 1947, their representatives held a meeting at which they discussed the costs of providing fluid milk to the consumer; that shortly thereafter oral conversations took place between the several defendants wherein each assured the others and was assured by them of the intention of each to raise the price of its milk to a certain figure on a certain date; and that on November 1, 2, and 3, 1947, all the defendants offered their milk for sale at an identical increased price; and on December 30, 1947, a like meeting was held, followed by like conversations, followed in turn on January 1, 1948, by a simultaneous increase of one cent per quart for the milk of

each defendant. The complaint further charged that the defendants threatened to and would continue such illegal practices unless restrained and it demanded: (1) That each defendant, except for one copartner who had attained immunity, be adjudged liable to the plaintiff for $5,000, which is the maximum forfeiture provided for violation of sec. 133.01, Stats.; (2) that each defendant be enjoined from further violation in the respects complained of; (3) that the corporate charters of those defendants which are Wisconsin corporations be canceled and annulled, and (4) that the licenses permitting those defendants which are foreign corporations to do business in Wisconsin be canceled and annulled.

Defendants submit that the complaint does not allege that either in the meetings or in the subsequent individual exchanges of information did they agree upon prices to be charged or agree to adhere to such prices as were announced; that the things which the complaint says the defendants did were lawful things which do not constitute a sufficient basis for inferring that an unlawful agreement existed; and unless an unlawful agreement exists there can be no unlawful conspiracy. The defendants concede that an unlawful agreement, which they say is the essence of conspiracy or unlawful combination, may be established by implication from the acts and conduct of the parties but they urge that the unlawful agreement which the complaint alleges is a conclusion without force or effect because it may not legitimately be inferred from the so-called lawful events which are pleaded; hence, the conclusion of agreement being invalid, no allegation of agreement remains and the complaint has failed to state a cause of action.

It is true that the complaint does not specifically allege that the defendants agreed upon the fixing or the maintenance of prices at either the meetings of the group or in the individual discussions. It does not say precisely when the agreement was made but it says there was and continues to be one whose existence is to be implied from the facts that the defendants

first conferred and then unanimously and simultaneously performed identical acts, and this sequence occurred not only once but twice. While it is possible that the uniform behavior of the defendants may be attributed to some other stimulus, we think that reasonable men observing the repeated phenomenon of ostensible competitors, so diverse in size and organization, suddenly reacting in an identical manner would, until the reaction was otherwise explained, conclude that the uniformity was the result of agreement; in other words, that under such circumstances the concerted action implied an agreement so to act. Defendants cite authority that competitors may lawfully exchange information on the expense of doing business and may lawfully inform each other of projected price changes, and they argue that the existence of an unlawful agreement may not be implied from lawful acts. There is, of course, present here the further factor of the concerted price action. If fixing prices was not illegal we do not think that the defendants, themselves, would have any difficulty in seeing that an agreement to fix them was quite clearly and fairly to be implied from the sequence of consultation and price action which the complaint alleges. That implication is not changed at all by the view which the law takes of the legality of the agreement.

We conclude that the allegations of the complaint set forth facts sufficient to constitute a cause of action.

The defendants further demur on the ground that the complaint improperly unites several causes of action which are variously legal and equitable, based on different statutes to be enforced in different manners and which do not affect all the defendants alike. As an original proposition this objection had merit, as shown by the dissenting opinions of two learned justices in the case of *State v. P. Lorillard Co.* (1923), 181 Wis. 347, 193 N. W. 613, but the decision of this court was to the contrary. That authority has been consistently followed and applied ever since by this court

in antitrust actions and we think it is controlling here. The defendants in the *Lorillard Case* were domestic and foreign corporations and the relief demanded by the complaint was injunction of future violations, cancellation of the charters of the Wisconsin corporations, ouster of the foreign corporations, and money forfeitures by all, which are exactly the demands of the present complaint, except that it recognizes the immunity of one partner to the demand for money forfeiture. Although in the *Lorillard Case* we were aware that it was necessary to rely upon different statutes to obtain the different forms of relief demanded by the complaint, we then held (181 Wis. p. 366) :

"The delict of the defendants is the conspiracy alleged and their acts in its execution. The primary right and duty of the state and the wrong of the defendants constitute the cause of action, and we regard it as one cause of action, although as incidental to it there may be different forms of relief as against the different defendants.

"Hence it is our conclusion that there is no misjoinder of causes of action."

Counsel have attempted to distinguish the *Lorillard Case* from the one now before us but we do not consider that they have succeeded in any material respect and upon its authority the present complaint is likewise sustained against their objection of misjoinder of causes of action.

All of the defendants but two demurred on the ground that the complaint failed to state a cause of action because, as they say, the statutes upon which liability is predicated or penalties provided are unconstitutional. First, they submit, secs. 133.01, 133.21, and 226.07, Stats., so vaguely describe the offenses that to enforce them would deprive the defendants of their property without due process of law. Sec. 133.01 has been set out above. Sec. 133.21 provides that when it has been proved that a domestic corporation has entered into a combination or agreement intended to restrain or prevent

competition, etc., it shall have its charter annulled. Sec. 226.07 requires the annulment of the license to do business in this state of any foreign corporation so offending. In the *Lorillard Case* we held that sec. 133.01, then known as sec. 1747*e*, was sufficiently definite in its prohibitions to satisfy the requirements of constitutionality, and as it is the same conduct which is proscribed by secs. 133.21 and 226.07 the same rule must apply to them. The demurrers were properly overruled in this respect.

The same defendants also contend that the penalties provided by secs. 133.21, 133.23, 226.07, and 226.09, Stats., are unconstitutional because they fail to provide sufficient means for their execution. These are the statutes requiring the revocation of charters and licenses and directing the attorney general to bring actions for that purpose. The learned trial court did not think it necessary to consider these sections upon demurrer and, indeed, before judgment has been obtained, it may be somewhat premature to speculate upon the constitutionality of the means which the trial court may adopt to implement its judgment if the plaintiff should prevail. However, in view of the defendants' argument that the sections are unconstitutional because not sufficiently precise in directing the methods to be used by the court after judgment it is not inappropriate to say that, because the legislature has not prescribed the various steps to be taken in making a judgment of revocation or ouster effective, in our view the statutes commanding such penalties are not automatically unconstitutional and void. Courts are accustomed to deal with situations where, after stating the policy, defining the offense, and prescribing the penalty the legislature has left matters of procedure to the court, and in such cases courts usually find their inherent and traditional powers are adequate to work out the details of effective judgments without infringing constitutional rights. We anticipate that it may be accomplished here should the case come to trial on the merits and

the contentions of the plaintiff prevail. Accordingly, we consider that this objection to the constitutionality of the statutes is not well taken.

These defendants also contend that the statutes requiring revocation of corporate charters and licenses are unconstitutional and void as depriving the offending corporations of their property without due process of law, denying them the equal protection of the laws, and unduly burdening interstate commerce, and such penalties constitute cruel, unusual, and excessive punishment. The brief and oral argument on this phase was devoted almost entirely to the situation of the defendant Borden Company which considered itself particularly aggrieved. It was submitted that the loss which Borden would sustain by ouster far surpasses that imposed on the domestic corporations by dissolution because of Borden's great size and business interests. We are unable to follow the argument that when the law prescribes the same penalty for the same offense upon all offenders a discrimination has actually been practiced because the penalty hurts some worse than others. Nor can we concede that the revocation of corporate charters and licenses to do business is unusual punishment for the abuse of such charters and licenses by bodies who are creatures of statute and who exist or come into the state only by the state's permission. This remedy for unlawful conduct by corporations is of long standing and has been frequently invoked.

"Corporations are recognized as creatures of the law and they owe obedience thereto, and, when they fail to perform duties which they were created to discharge and in which the public has an interest, or where they do unauthorized or forbidden acts, the state has the right to wrest its franchise from the offending corporation. . . ." 19 C. J. S., Corporations, p. 1424, sec. 1651.

We cannot say that the penalty is unusual nor do we say it is excessive or disproportionate to the offense of controlling

the price of food through a conspiracy. As for cruelty, there can be none to a corporation which is an artificial, not a natural body.

"There is no 'personal' death or loss of liberty in the annulment of a corporate franchise or in a judgment for damages against it. When, therefore, it undertakes to do that which the law forbids and which injures the public, it has no claim for mercy that needs be recognized." *Nekoosa-Edwards P. Co. v. News Publishing Co.* (1921), 174 Wis. 107, 116, 182 N. W. 919.

The final argument is that if a corporation reaches such a size and does so much business that its dissolution or ouster would unduly burden interstate commerce, then the state must suffer its presence notwithstanding its lawless conduct and may impose only such mild penalties as do not interfere with its operations. The application of the principle would absolve the corporation from effective punishment for noncompliance with any state law. This presents a challenge to its sovereignty which the state must meet. If it is sound law that the magnitude of the corporation constitutes it the ward of the commerce clause of the federal constitution and makes it invulnerable to control by the state which has created or admitted it, the state in its own defense must oust or dissolve it, if possible, before such size is attained. If the principle is not sound law but is only resounding arrogance, and this is our view, the penalties are not unconstitutional because of any supposed effect on interstate commerce. And so thought the supreme court of the United States, as we read its opinion in *Standard Oil Co. v. Missouri* (1912), 224 U. S. 270, 32 Sup. Ct. 406, 56 L. Ed. 760, in which it affirmed the decision of the supreme court of Missouri, reported in 218 Mo. 1, 116 S. W. 902, which upheld the penalty of fine and ouster imposed on the corporation for violation of the state's antitrust laws.

The plaintiff has given considerable time and space to attacking the order of the trial court requiring its original complaint to be made more definite and certain, contending that the order was an abuse of discretion. If it was so, an appeal from it would lie (*Crowley v. Hicks* (1898), 98 Wis. 566, 74 N. W. 348), but no appeal was taken. On the appeal from the order overruling the demurrers the respondent can, without notice, have a review of such alleged errors, the correction of which would support the order appealed from. We are unable to see how any correction of error, if error there be, respecting the sufficiency of the original complaint tends to support the order overruling the demurrers to the amended complaint. This part of plaintiff's argument is not within the scope of the appeal nor of our consideration.

*By the Court.*—Order overruling defendants' demurrers affirmed and record remanded for further proceedings. The respondent shall have no costs for that part of its brief and appendix which deals with the order to make the first complaint more definite and certain.

MARTIN and BROADFOOT, JJ., took no part.