CITY OF MADISON, and others, Respondents, v. HYLAND, HALL & COMPANY, and others, Appellants.

*No. 75–319. Argued June 1, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 422.)

For the appellants there were briefs by *Robert J. Kay* and *Geisler & Kay* of Madison, and oral argument by *Robert J. Kay*.

For the respondents there was a brief by *Willard S. Stafford, Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison, and oral argument by *Willard S. Stafford* and *Mr. Horowitz*.

HEFFERNAN, J. This is an appeal from an order of July 31, 1975, overruling a demurrer to the complaint. The principal question raised on appeal is whether cities and counties have standing to sue for treble damages under the Wisconsin antitrust act. We conclude that they do, and affirm the order.

A civil antitrust action was commenced by plaintiffs on September 21, 1973. The city of Madison and Dane county charge the defendants with fixing bids on plumb-

ing, heating, ventilating, and air-conditioning contracts, in violation of ch. 133, Stats.[1] Under ch. 133, the city of Madison and Dane county now pursue two civil remedies for the alleged conspiracy. They demand treble damages under sec. 133.01; and, pursuant to sec. 133.23, they seek recovery of payments on various contracts made with the defendants. Madison sues in its capacity as a city and as a school district. Seventeen defendants were originally named, but some have been dismissed pursuant to settlements. Eight defendants remain. Three defendants bring this appeal.

Plaintiffs' second amended complaint alleges that a continuing conspiracy, beginning about 1958 and continuing until at least 1969, existed among all the defendants to restrain and prevent competition in the supply and price of mechanical construction, and that, pursuant to such conspiracy, the defendants allegedly submitted collusive bids on mechanical work. The complaint alleges that each of the defendants was a member of the conspiracy and that each defendant, while a member of the conspiracy, entered into contracts with the plaintiffs with respect to some 103 projects listed in Exhibit A, appended to the complaint, which contracts were founded upon and connected with the conspiracy. Exhibit A indicates the particular plaintiff for which each specific construction contract was performed, the particular defendant corporation or partnership which performed the construction services, the name of the project, and the total payments made by the specific plaintiff to the specific contractor.

Defendants demurred to the second amended complaint on the following grounds: (1) Plaintiffs have no standing to sue for treble damages under sec. 133.01, Stats.; (2) plaintiffs improperly united several causes of action in their second amended complaint; (3) the claims

---

[1] A criminal case concerning this alleged conspiracy was before this court in *State v. Hall* (1974), 65 Wis. 2d 18, 221 N. W. 2d 806.

set forth in the second amended complaint are barred by the applicable statute of limitations; and (4) sec. 133.23 is unconstitutional on its face. The trial court overruled the demurrer as to the first three grounds asserted and deferred its ruling on the fourth until trial.

Defendants contend that neither the city of Madison nor Dane county has standing to assert a claim for treble damages under sec. 133.01, Stats. This is a question of first impression in this state.

The relevant statutory language in sec. 133.01 (1), Stats., arguably permitting the recovery of treble damages, is:

"133.01 **Unlawful contracts; conspiracies.** (1) . . . Any such person, corporation, copartnership, trustee or association shall also be liable to any person transacting or doing business in this state for threefold the damages he may sustain by reason of the doing of anything forbidden by this section, and the cost of suit including a reasonable attorney's fee. . . ."

Sec. 133.04, Stats., defines "person" as follows:

"133.04 **What organizations included.** The word 'person' wherever used in ss. 133.01 to 133.03 shall be deemed to include, besides individuals, corporations, partnerships and associations existing under or authorized by the laws of the United States, any of the territories, of this or any other state or of any foreign country. . . ."

Sec. 990.01 (26), Stats., also defines "person":

"990.01 **Construction of laws; words and phrases.** . . . In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

"(26) PERSON. 'Person' includes all partnerships, associations and bodies politic and corporate."

Defendants argue that the city and county are not "persons" within the meaning of either sec. 133.04, Stats.,

or sec. 990.01 (26), and that, even if they were, they are not "transacting or doing business in this state" within the meaning of sec. 133.01.[2] We disagree.

Because sec. 133.04, Stats., specifically relates to actions brought under sec. 133.01, it controls over any inconsistent definition of "person" found elsewhere in the statutes. *Schlosser v. Allis-Chalmers Corp.* (1974), 65 Wis. 2d 153, 222 N. W. 2d 156. However, statutes relating to the same subject matter should be harmonized if possible. *Weiss v. Holman* (1973), 58 Wis. 2d 608, 619, 207 N. W. 2d 660.

By statute, the city of Madison is "a body corporate and politic, with powers and privileges of a municipal corporation at common law and conferred by these statutes." Sec. 66.019, Stats. This court has repeatedly held that a city is a municipal corporation. *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 317, 116 N. W. 2d 142; *Madison Metropolitan Sewerage Dist v. Committee* (1951), 260 Wis. 229, 50 N. W. 2d 424. A city is a "body politic and corporate." *State ex rel. Poole v. Menomonee Falls* (1972), 55 Wis. 2d 555, 561, 200 N. W. 2d 580.

Sec. 59.01 (1), Stats., refers to counties as bodies corporate, and this court has so held in *State ex rel. Shawano v. Engel* (1920), 171 Wis. 299, 177 N. W. 33. While a county is not, strictly speaking, a municipal corporation, this court has held that it is a "*quasi*-municipal corporation" (*Engel, supra,* page 304; *Columbia, supra,* p. 317), with many of the attributes of a municipal corporation (*Madison Metropolitan Sewerage Dist., supra*).[3]

---

[2] Defendants concede that the city and county may sue under sec. 133.23, Stats., for recovery of contract payments.

[3] This court held that a county is subject to the joinder-of-defendants statute, sec. 260.11 (1), Stats., which allows joinder of any "person . . . who has . . . an interest in the controversy adverse to plaintiff." *Anderson v. Green Bay Hockey, Inc.* (1973), 56 Wis. 2d 763, 771, 203 N. W. 2d 79.

Under sec. 990.01 (26), Stats., it would appear that both cities and counties are "bodies politic and corporate" and are, therefore, "persons" within the meaning of that statute. While the statutes do not specifically state that a county is a body politic, this court has noted that a county, like a city, is a body politic. *Douglas County v. Industrial Comm.* (1957), 275 Wis. 309, 81 N. W. 2d 807; *Columbia, supra; Kyncl v. Kenosha County* (1968), 37 Wis. 2d 547, 155 N. W. 2d 583.

There is, then, no contradiction between secs. 133.04 and 990.01 (26), Stats. Reading these two sections together, we conclude that cities and counties are "corporations" within the meaning of sec. 133.04 and "bodies politic and corporate" within the meaning of sec. 990.01 (26). Thus, the city of Madison and Dane county are "persons" within the meaning of sec. 133.01, and are entitled to sue for treble damages.

Since we conclude that, under the consistent interpretations of this court holding that cities and counties are persons under the law and are, hence, entitled to use the treble-damages remedy of sec. 133.01, Stats., it is perhaps superfluous to further consider the statutory interpretations which lead to the same result. We will, however, briefly address the arguments raised by defendants.

Defendants argue that this court very recently in *State ex rel. Dept. of Pub. Instruction v. ILHR* (1975), 68 Wis. 2d 677, 229 N. W. 2d 591, held that the state and its political subdivisions are bodies politic but not corporate and therefore not within the definition of "person" in sec. 990.01 (26), Stats., or within the definition of "person" as used in sec. 133.04. The defendants misread that case. That case was concerned only with the status of the state itself and agencies that are the direct administrative arms of the state. The case did not deal with governmental entities such as cities and counties.

The state, of course, is the sovereign, deriving its rights from the people; and it is the body politic which has the power to create corporations, either private or public. Cities and counties are, however, the creatures of the state's incorporation power; and, by the interpretations of this court, cities and counties are, respectively, municipal corporations or *quasi*-municipal corporations. They, furthermore, are bodies politic under sec. 990.01 (26), Stats. *State ex rel. Dept. of Pub. Instruction v. ILHR, supra,* supports, rather than contradicts, the corporate status of cities and counties.

The defendants also rely on the legislature's failure to pass bills in 1973 and 1975 which would have specifically permitted a county or a municipality to sue for treble damages in state antitrust actions. Had this court previously determined that counties or cities did not have standing to sue for treble damages, the failure of the legislature to enact a law to overturn such decision would be relevant to the question of the legislature's acquiescence in a prior holding. Such prior holding, however, has never been made by this court.

The nonaction of the legislature in failing to expressly provide for treble damages in a case such as this cannot be construed as an expression of legislative intent that cities and counties ought not have that remedy or that they do not presently possess such remedy under the existing statutes. The most that can be gleaned from these abortive attempts at amending the statute is the desire of some legislators to express with greater clarity than does the present statute the right of these municipalities to be afforded the treble-damages remedy. Such doubts of the present effect of the law have no bearing upon our interpretation under the clear guidelines of the Wisconsin law. They are irrelevant to the legislature's intention when the Wisconsin antitrust law was enacted in 1893.

The defendants also argue that treble damages are tantamount to a statutory penalty, are penal in nature, and, therefore, must be construed strictly. From this, they would have us conclude that municipalities, which are not expressly included in the act, cannot by extraneous definition or decisional law be included in the category of "persons." The statute is indeed in part penal in nature. *State ex rel. Nordell v. Kinney* (1974), 62 Wis. 2d 558, 215 N. W. 2d 405. The statute, however, is remedial in nature in that it seeks to preserve our free-enterprise system. As Justice MARSHALL stated in the case of *Hawaii v. Standard Oil Co.* (1972), 405 U. S. 251, 262, 92 Sup. Ct. 885, 31 L. Ed. 2d 184:

"Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. . . . This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation."

It is apparent that the purpose of the statutes transcends the object of merely penalizing particular violators. Under the scheme of things, the antitrust laws have the affirmative purpose of preserving the economic vitality of the nation and of the state. We need not dwell on the specific evils that the antitrust laws sought to curb. It is apparent that antitrust laws are remedial in nature as well as penal. Under the accepted law of Wisconsin and of other jurisdictions, remedial statutes should be liberally construed "to suppress the mischief and advance the remedy which [the statute] intended to afford." *Stone v. Inter-State Exchange* (1930), 200 Wis. 585, 589, 229 N. W. 26; *Schnabl v. Ford Motor Co.* (1972), 54 Wis. 2d 345, 352, 195 N. W. 2d 602, 198 N. W. 2d 161.

Where statutes are both penal and remedial, courts separate the penal provisions from the remedial, giving the provisions establishing penalties strict construction and the remainder of the act a liberal construction. 3

Sutherland, *Statutory Construction* (4th ed. Sands), p. 35, sec. 60.04.

Here, the remedial and punitive damages are included in the same penalty. The proper construction of these circumstances, according to Sutherland, *supra,* is to give liberal construction to the penalties which are inherent to the remedial aspects of the act, but to strictly construe the provisions creating the wrong. To reach the conclusion we do, we need not construe the statute liberally. We merely give the penalties the *literal* meaning set forth in the statute.

Since both treble and actual damages are integral to the remedial aspects of the act, the right to their enforcement by cities and counties should be liberally construed, while the aspects of the alleged conduct which gives rise to these remedies should be construed strictly.

The defendants also argue that, if this court construes cities and counties as persons having standing to pursue treble-damage remedies as plaintiffs, then they would be liable to such suits as defendants under sec. 133.01, Stats. The short answer to that is, why should they not be subject to such liabilities if they or other persons combine to restrain trade.

The defendants' position seems basically that, if cities and counties could be liable, then so could the state. We have previously referred to the very real difference between the state and its instrumentalities, which we classify as bodies politic and corporate and which are persons under the law. As we stated above, the state is a sovereign and cannot be sued without its consent, while the immunity conferred upon municipalities derives, not from their sovereign status—for they have none—but from considerations of public policy, which were once subsumed under the doctrine of municipal immunity. The doctrine of municipal immunity has been abrogated by this court. *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

Accordingly, the rule that the state is not to be considered within the purview of a regulatory statute of general application is not involved in the case before us. Nor do we decide in this action that municipalities are subject to treble-damage judgments. The question is not presented.

Wisconsin's antitrust act was modeled after the Sherman Act of the United States. The definition of "person" in the Wisconsin act is essentially the same as that in the federal act. At the time of the enactment of the Wisconsin legislation, it was the intent of the legislature to follow the construction and interpretations of the federal act. Sec. 133.04, Stats., was enacted to further this purpose.

This court has repeatedly held that sec. 133.01, Stats., was intended as a reenactment of the first two sections of the Sherman Antitrust Act, but applicable to intrastate transactions, and with its construction to be governed by the federal decisions which construe the federal law. *State ex rel. Nordell v. Kinney, supra,* p. 563. The federal cases lead to the conclusion we reach here.

Under the Sherman Act, the United States Supreme Court held that the civil remedy of treble damages was afforded to a municipality. *Chattanooga Foundry & Pipe Works v. Atlanta* (1906), 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241.

In *United States v. Cooper Corporation* (1941), 312 U. S. 600, 61 Sup. Ct. 742, 85 L. Ed. 1071, the United States Supreme Court held that the United States was not a "person" within the meaning of the Sherman Act and thus could not sue for treble damages. The court noted that, in common usage, the term, "person," does not include the sovereign and that statutes employing the term are ordinarily construed to exclude it. Next, the court viewed the policy underlying the Sherman Act and concluded that the legislative intent was to allow only private parties to sue for treble damages as the federal

government had other weapons to combat the evils sought to be avoided and needed no incentive to enforce the Act as did private parties.

In *Georgia v. Evans* (1942), 316 U. S. 159, 62 Sup. Ct. 972, 86 L. Ed. 1346, the United States Supreme Court concluded that, under the federal act, a state could avail itself of the treble-damage provision. The language of *Evans* is instructive. Therein, the court stated:

"Reason balks against implying denial of such a remedy to a State which purchases materials for use in building public highways. Nothing in the Act, its history, or its policy, could justify so restrictive a construction of the word 'person' in section 7 as to exclude a State. Such a construction would deny all redress to a State, when mulcted by a violator of the Sherman Law, merely because it is a State." (Pp. 162, 163)

Nevertheless, the following year, in *Parker v. Brown* (1943), 317 U. S. 341, 63 Sup. Ct. 307, 87 L. Ed. 315, the United States Supreme Court held that a state and its municipalities could not be sued for treble damages under the Sherman Act. We cite that case only for the purpose of pointing out that the right to sue for treble damages and liability to suit are not necessarily reciprocal.

The important conclusion, however, to be drawn from the *Cooper-Evans-Parker* triad is the policy factor of giving general vitality to the purpose of maintaining competition by implementing and construing liberally the treble-damage provision of the antitrust law. The United States Supreme Court apparently, to date, sees no monopoly hazards by combines of municipalities. As we have pointed out earlier, however, such restraints on competition may very well be within the implied purview of antitrust legislation.

The United States court of appeals in *State of West Virginia v. Chas. Pfizer & Co.* (2d Cir. 1971), 440 Fed. 2d 1079, 1087, emphasized the admittedly result orientation with which courts have approached the treble-dam-

age aspects of the antitrust laws. They have, in effect, concluded that, whenever the application of a particular provision is essential to the enforcement of the antitrust laws, the court will infer that the legislature intended that it be extended to the entity in question even though strict construction of the statutory language, which overlooks the remedial nature of the antitrust law, might lead to the opposite conclusion.

Although, under Wisconsin law, we find express language which places cities and counties in the category of persons eligible to sue for treble damages, we conclude also that the policy of the law leads to the inference that the legislature intended that such governmental entities be allowed to sue as a matter of public policy and in furtherance of the remedial aspects of the antitrust laws.

The defendants argue that another aspect of the Wisconsin law would preclude cities and counties from standing to sue, even if we were to conclude that they were persons under the law. Under sec. 133.01, Stats., the remedy of treble damages is reserved to persons "transacting or doing business in this state."

The defendants contend that such persons are only those engaged in commercial activity with a profit motive. True, profit is not the motive or the purpose of a body politic, but defendants' interpretation is not borne out by reason or precedent. In *Hawaii, supra*, it was held that, under the federal antitrust act, although commercial interests and enterprises are specifically encompassed within the purview of the statute, states and municipalities may nevertheless sue for treble damages, even though they have no concern with the profit motive *per se*. The distinction made in *Hawaii* was between the noncommercial and the commercial capacity of a body politic. The United States Supreme Court held therein that a state may recover treble damages for in-

juries to its commercial interests as a consumer. As Justice MARSHALL stated in that case:

> "The legislative history of that provision makes it quite plain that the United States was authorized to recover, not for general injury to the national economy or to the Government's ability to carry out its functions, but only for those injuries suffered in its capacity as a consumer of goods and services." (P. 265)

In that case the court pointed out that neither the United States nor a state could recover for the economic injury to its sovereign interests, but, where Hawaii sued in its proprietary capacity, it was permitted to recover treble damages.

Accordingly, under any rationale, the fact that an enterprise is not undertaken for the profit motive does not mean that commercial or business interests are not at stake. In the instant case, the cities and counties in question are suing, not in their governmental capacities, but in their proprietary and commercial capacities, for statutory damages resulting from the violation of the antitrust statutes.

It is also apparent that the phrase, "transacting or doing business in this state," has another and paramount meaning, and that is simply the jurisdictional qualification that a plaintiff, to invoke the antitrust law of the state of Wisconsin, must have at least minimal contacts with the state in intrastate commerce. There is no evidence that these jurisdictional words were intended to limit the remedy of consumers whose purpose for existence is not profit. No matter how the question of standing is viewed, we conclude that cities and counties may under the Wisconsin act recover treble damages.

The defendants also contend that the plaintiffs have improperly joined several causes of action and, hence, the complaint is demurrable under sec. 263.06 (5), Stats.

They also argue that, under sec. 263.04, Stats., the several causes of action were improperly united because they did not "affect all the parties to the action."

We disagree with each of these assertions and hold that the complaint is not demurrable. As we view the complaint, but one cause of action has been asserted; and, accordingly, the question of misjoinder does not arise. The trial court correctly analyzed this contention and concluded that but one cause of action was pleaded, but there was a prayer for different forms of relief—a request for separate remedies under different sections of the statutes.

■ We stated in *Ewing v. General Motors Corp.* (1975), 70 Wis. 2d 962, 966, 236 N. W. 2d 200:

". . . the test of whether there is more than one cause of action is '. . . whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.' "

■ The court in *Ewing* relied on *Rogers v. Oconomowoc* (1962), 16 Wis. 2d 621, 115 N. W. 2d 635, which defined primary right as it is considered in determining the joinder of causes of action:

"According to this definition, there is only one cause of action if there is only one grouping of facts falling into a single unit or occurrence as a lay person would view them." *Ewing,* page 967.

Under the terms of the test stated in *Ewing* for a single cause of action, the complaint reveals but one grouping of facts which fall into a single unit, that is, one continuing conspiracy among the defendants made with particular conspirators and contracts made pursuant to the alleged conspiracy. There is but one subject of the controversy—the conspiracy and the contracts growing out of it—and one primary right asserted—the

right to be free from the collusive bids on the various contracts.

Whether the conspiracy and the actual execution of the contracts are viewed separately or together, the plaintiffs are obligated to prove the same facts—the conspiracy among the named defendants and the contracts made with the individual plaintiffs pursuant to the conspiracy. The same facts constitute the identical cause of action for which the law gives separate remedies —treble damages and the recovery of contract payments.

In a somewhat similar case, *State v. P. Lorillard Co.* (1923), 181 Wis. 347, 193 N. W. 613, this court held that but one cause of action was stated in a civil antitrust complaint brought by the state although the complaint demanded four separate remedies under separate statutes. The complaint sought injunction, the annulment of the defendants' corporate charters, the cancellation of licenses to do business in the state, and a separate forfeiture from each defendant. This court in *Lorillard* said:

"The delict of the defendants is the conspiracy alleged and their acts in its execution. The primary right and duty of the state and the wrong of the defendants constitute the cause of action, and we regard it as one cause of action, although as incidental to it there may be different forms of relief as against the different defendants." (P. 366)

Admittedly, a plaintiff does not prove its case when it proves a conspiracy. It must also prove that it was damaged by the conspiracy as the result of the affirmative acts of the conspirators. Although both the conspiracy and the wrongful and damaging acts must be proved, where these acts arise out of a continuing conspiracy only one cause of action is alleged. There is no misjoinder of causes of action.

Nor is there a misjoinder of the parties defendant. Sec. 260.11, Stats., is dispositive of such joinder:

"260.11 **Who as defendants.** (1) Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. A plaintiff may join as defendants persons against whom the right to relief is alleged to exist in the alternative, although recovery against one may be inconsistent with recovery against the other. . . ."

In the instant case, all of the defendants are jointly liable for treble damages under the claim for relief based on sec. 133.01, Stats., and are properly joined as defendants. Although sec. 133.23, for the contract payments, would only concern the individual liability of particular defendants to particular plaintiffs, this does not affect the propriety of the joinder, for but one cause of action is stated in the complaint.

We are also satisfied that, under sec. 260.10, Stats., the joinder of the parties plaintiff was proper. That section provides in part that, "All persons having an interest in the subject of the action . . . may be joined as plaintiffs."

Sec. 260.12, Stats., provides in part:

"260.12 **Parties united in interest to be joined; class actions; alternative joinder.** . . . when more than one person makes a separate claim for damage against the same person or persons based upon the same alleged tortious conduct, they may unite in prosecuting their claims in one action."

In the instant case, plaintiffs rest their claim for treble damages and recovery of contract payments on the allegation that each of the defendants participated in the same tortious conduct, the conspiracy. *Ewing, supra,* expressly permitted the recovery of dissimilar claims because there were common questions of fact that arose out of the same incident, and, accordingly:

". . . each individually injured plaintiff has an 'interest' in the subject matter of the other plaintiff's action, and so they should be able to join together." *Ewing,* page 970.

The plaintiffs were properly joined in the same cause of action, and that cause of action affected all the parties to the action, as required under sec. 263.04, Stats. Even though each defendant is not equally affected under the recoupment of contract payments under sec. 133.23, all of the defendants nevertheless are affected, and that is all that sec. 263.04 requires.

The trial judge correctly decided the question of joinder and, in addition, correctly placed heavy emphasis on the public policy which is to be served by the liberal construction of joinder statutes—that a closely related and unified controversy should be decided in a single lawsuit. He pointed out the havoc to our legal system if closely related actions arising out of a single group of facts are tried in a multiplicity of lawsuits. Under the new Rules of Civil Procedure effective January 1, 1976, which we deem to be merely a codification of present liberal joinder rules, plaintiffs could, without question, join their separate claims for relief against all of these defendants in a single economical suit. *See:* secs. 803.02 and 803.04, Stats., Wisconsin Rules of Civil Procedure, 67 Wis. 2d 642, 646.

The defendants contend that the amended complaint on its face contains allegations which establish that the two-year statute of limitations has run. When the timeliness of bringing a suit is challenged on demurrer, the failure to commence the action in time must appear from the face of the complaint. Sec. 263.06 (7), Stats.:

"Objections which do not appear on the face of the plaintiff's declaration or complaint must be taken by plea or answer and not by demurrer even though extrinsic facts are conceded at the hearing." *Estate of*

*Rosenstein* (1970), 47 Wis. 2d 494, 497, 177 N. W. 2d 372.

In examining this complaint, we find that the dates of the contracts, listed in Exhibit A appended to the complaint, nowhere appear in the complaint. All that appears in the complaint is the allegation that the conspiracy existed until at least the year 1969. The complaint does not allege that all of the contracts entered into pursuant to the conspiracy were entered into prior to the termination of the conspiracy. Accordingly, we cannot determine from the face of the complaint when the cause of action accrued and when the applicable period of limitations commenced to run. The trial court correctly stated:

"Clearly the complaint must unequivocally allege dates in order that the limitations ground of demurrer can be asserted successfully. This complaint does not do so. . . ."

It should also be pointed out that the complaint in paragraphs 17 through 22 alleges that the defendants fraudulently concealed their conspiracy. These paragraphs allege all the facts needed to invoke the doctrine that a defendant who fraudulently conceals a conspiracy is estopped to assert the statute of limitations as a defense. *Boehm v. Wheeler* (1974), 65 Wis. 2d 668, 681, 223 N. W. 2d 536.

The defendants argue that they did not in fact fraudulently conceal the conspiracy. This, of course, may be a matter of proof at trial, but by doing so now, they depart from the allegations of the complaint and improperly rely on factual assertions that are extrinsic to the complaint. Because the plaintiffs here have alleged sufficient facts to invoke the doctrine of estoppel, the complaint is not demurrable on the ground of the running of the period of limitations, regardless of what statute of limitations is applicable.

The defendants also argue that, whatever the law might be in regard to limitations where a conspiracy is concealed, under the terms of sec. 133.23, Stats., no recovery of contract payments can be made unless the action is brought within six years of making a contract.

Conceding *arguendo* for the purpose of this discussion that the assertion is correct, the demurrer must be overruled, because it does not appear from the face of the complaint that any statute of limitations has run in respect to the individual contracts. It should be observed, however, that the wrongfulness alleged in respect to the contracts is not that the contracts *per se* were tortious, but that they were tortious as being the product of the conspiracy. Hence, we do no conclude that the statute of limitations on individual contracts is to be divorced from the period of limitations applicable to the allegedly concealed conspiracy. Even were we to assume that the two can be separated, as we said in *A C Storage Co. v. Madison Moving & W. Corp.* (1968), 38 Wis. 2d 15, 155 N. W. 2d 567, the remedy of a defendant is not to demur when the contract dates are not alleged, but, initially at least, to move to make more definite and certain.

We do not in this case attempt to determine which statute of limitations would be applicable under the hypothetical situation postulated by the defendants. Their demurrer was addressed to a complaint which failed on its face to show any deficiency in respect to the time the action was brought. Accordingly, the period of limitations is not before us.

The defendants additionally challenge the constitutionality of sec. 133.23, Stats. The defendants argue that the plaintiffs seek the recovery of $6,000,000 worth of contracts. This, they argue, is a severe and oppressive penalty, which is in no way proportionate either to the actual damages sustained by the plaintiffs or the statutory treble damages. They argue that the most that can be permitted is the recovery of actual damages.

The defendants claim that this penalty, the complete disgorgement of a contract price, is shocking, is flagrantly oppressive, and is disproportionate to the offense for which it is imposed.

The plaintiffs appear to concede that a penalty may be unconstitutionally excessive if it is so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances. In amplification of this argument, plaintiffs take the position that the unconstitutionality of an allegedly excessive penalty turns upon facts which can only be developed in the course of trial. Until the facts are known, the plaintiffs point out, the court cannot determine either the size of the penalty or the amount of actual damages. The amount claimed as damages is not stated in the complaint.

We agree with the plaintiffs that this court, under the present posture of the case, cannot determine whether the contract penalties assessed will be disproportionate to the actual damages, which must abide the result of trial. We disagree with the defendants' contention that the statute in this respect is on its face unconstitutional. A statutory enactment is presumptively constitutional, and a party challenging the act has the burden of establishing unconstitutionality beyond a reasonable doubt. *Ortman v. Jensen & Johnson, Inc.* (1975), 66 Wis. 2d 508, 521, 225 N. W. 2d 635. The defendants have not sustained that burden at this juncture of the case. Their assertion of unconstitutionality is stated in abstract terms, and we conclude that, as a matter of abstract constitutional law, the provisions of sec. 133.23 are constitutional.

When a penalty is attacked as disproportionate and unreasonable, it is not always to be tested by comparing the loss suffered by the aggrieved parties to the statutory penalties, but by the public interest in enforcing the law and the relation of the penalty to that purpose. *St. Louis*

*Iron Mountain & Southern Ry. Co. v. Williams* (1919), 251 U. S. 63, 40 Sup. Ct. 71, 64 L. Ed. 139. In that case the statute regulated the rates for the transportation of railroad passengers. An overcharged passenger under the statute was entitled to a penalty which could be recovered in a civil action. The overcharged passengers were permitted to recover a penalty of over one hundred times their actual damages, together with their suit costs and attorney fees. In upholding this statutory provision, the United States Supreme Court stated:

"When the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, its validity is not to be tested in that way. When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." (P. 67)

*State v. Trailer Service, Inc.* (1973), 61 Wis. 2d 400, 212 N. W. 2d 683, referred to the same general principle as that relied upon by the defendants, that a penalty which is so disproportionate to the offense as to shock the public sentiment may be unconstitutional. The court, nevertheless, upheld overload penalties that were not provably related to the damages sustained in the particular overload incident. It relied upon the general public interest in protecting public highways from deterioration by overload of trucks. The court said:

"To keep the potential threat of enforcement and the desire to obey the law through self-discipline, graduated fines in amounts far exceeding the payload are reasonable means of enforcement; such fines being not only a deterrent to the individual trucker but to the trucking interest generally." (P. 410)

This court has sustained another portion of sec. 133.23, Stats., against the claim of unconstitutionally excessive penalties in *State v. Golden Guernsey Dairy Co-operative* (1950), 257 Wis. 254, 43 N. W. 2d 31. In that case, the penalty sought was the revocation of the corporate charter and the denial of the right to do business in Wisconsin. That penalty was upheld, despite the fact that it had no relation to the actual damages caused by the defendant corporations' violation and despite the fact that the imposition of the penalty resulted in the corporate death of the defendants.

Mere severity of the sanctions in antitrust cases does not make them *per se* excessive or disproportionate in a constitutional sense. What is at stake, in the legislature's judgment, is our system of free enterprise and competition. The constitutionality of the penalty is, therefore, to be measured not by actual damages sustained by a private party, but by the value of the public's interest in enforcing the laws that are designed to preserve our economic system.

Accordingly, we conclude the remedy provided by sec. 133.23, Stats., is not on its face unconstitutional. We do not foreclose these defendants or others from raising the question of oppressive penalties under the particular facts which may be developed in this or in future cases.

The defendants here claim that secs. 133.01 and 133.23, Stats., impose an unconstitutional double penalty. Under sec. 133.01, treble damages may be awarded; and, under sec. 133.23, the injured party may recoup the contract payment and still be able to keep the fruits of the contract. This question is not before us under the facts of a case, for the plaintiffs expressly disclaim any intention of obtaining double recovery, and they acquiesce in the trial judge's statement, "Any recovery for treble damages under Sec. 133.01 can be deducted from recovery of payments under Sec. 133.23."

Accordingly, we decline to resolve this question under the facts of this case. We point out, however, that the reliance of the defendants on *John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 198 N. W. 2d 363, is misplaced. There, the court held that treble damages and common-law punitive damages could not be recovered for the same offense. The court there is in effect concluded that the statutory remedy had completely preempted any possible common-law remedy for punitive damages. That ground is not available here, for both treble damages and recoupment of the contract amount are statutory remedies. There is nothing in the statutes to indicate that the remedies are mutually exclusive or are to be offset.

In view of the inadequacy of the briefs on this point, and particularly because the actual question is not raised under the facts of this case, we decline to conclude that the double recovery, if such it be—and apparently mandated by the statute—is unconstitutional.

We suggest, without disposing of the question here, that the recoupment of payments made under the contract is no different than the process that takes place whenever an illegal or fraudulent contract has been entered into and partially or wholly executed. The defrauded party may be entitled to recoupment of the full amount of the contract price, and the malefactor, even though it has given partial or substantial consideration, is, under equitable doctrines, denied the right of setoff. For a general discussion, *see:* 14 Williston, *Contracts* (3d ed.), p. 15, sec. 1630A ff.

There is no doubt, under the circumstances of the usual antitrust case, where full contract payments have been made, that there is an element of double recovery, for in respect to treble damages, the victim of the conspiracy is obligated to prove its monetary injury and its damages are multiplied threefold. In respect to the abrogation of a contract, under the plain meaning of the law, the

injured party is entitled to receive not only the excess beyond the market price, which is the starting point under the treble-damages law, but is also entitled to recoup the amount it would have been obligated to pay had not the contract price been fixed as a result of the illegal collusion.

The question is basically similar to that discussed above: Whether the public purpose is served and the intent of the legislation furthered by what are clearly onerous consequences of having participated in an illegal conspiracy in restraint of trade. Under the facts of this case and under the pleadings, we are not obliged to resolve this question.

The trial judge's memorandum decision properly disposed of all the significant issues raised on demurrer. We conclude that cities and counties in Wisconsin have standing to sue for treble damages. There was no improper joinder of causes of action or of parties plaintiff or defendant.

Sec. 133.23, Stats., with respect to recovery of contract payments, is not unconstitutional on its face. We decline to reach those aspects of unconstitutionality that are posed by the defendants, but which are not reachable under the facts before us.

The trial judge properly overruled the defendants' demurrer.

*By the Court.*—Order affirmed.

DAY, J., took no part.