ELMER O. CADY, Administrator Division of Corrections Departmentof Health and Social Services
You have requested an opinion on the authority of non-deputized correctional system staff members to pursue escapees. Actually, you have asked six related questions, the answers to which evolve from the general duties of the warden and the idea of deputization.
Section 53.07, Stats., states:
 53.07 The warden or superintendent shall maintain order, enforce obedience, suppress riots and prevent escapes. For such purposes he may command the aid of the officers of the institution and of persons outside of the prison; and any person who fails to obey such command shall be punished by imprisonment in the county jail not more than one year or by a fine not exceeding $500. The warden or superintendent may adopt proper means to capture escaped inmates.
46 Op. Att'y Gen. 280 (1957) previously interpreted this section as specifically granting police power to the warden within the institution and on institutional grounds. The question of the extent of the warden's police power in capturing escaped inmates is unanswered on the face of the statute, court cases, or opinions of this office.
A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses. Aero Auto Parts Inc. v. Dept. of Transp., 78 Wis.2d 235,253 N.W.2d 896 (1977). Section 53.07, Stats., may be understood to limit the warden's police power to the institution and adjoining grounds, or it may be understood to grant a broader police power encompassing the pursuit and recapture of escaped inmates. Assuming arguendo that the statute could be considered ambiguous, resort may be made to extrinsic matters, such as legislative history and statutes relating to the same subject matter, in an effort to determine the legislative intent or purpose underlying the statute. In re Estate of Haese,80 Wis.2d 285, 259 N.W.2d 54 (1927); Czaike v. Czaike, 73 Wis.2d 9,242 N.W.2d 214 (1976). A cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction which would defeat the manifest object of *Page 354 
the act. Each part of the statute should be construed with all other parts to produce a harmonious whole, Milwaukee County v.ILHR Dept., 80 Wis.2d 445, 259 N.W.2d 118 (1977), and unreasonable construction should be rejected where a reasonable construction is possible. Wis. Environmental Decade v. PublicService Comm., 84 Wis.2d 504, 267 N.W.2d 609 (1978). The primary goal of statutory construction is to give effect to the will of the Legislature.
Section 53.07, Stats., is the result of combining, and restating, two earlier statutes. Ch. 519, sec. 1, Laws of 1947. The ancestors of sec. 53.07, Stats., were created by ch. 193, secs. 42 and 55, Laws of 1873, which created secs. 4922 and 4930, Stats. (1878), later renumbered secs. 53.07 and 53.13, Stats., by ch. 348, secs. 9, and 15, Laws of 1919. viz.:
 Order how maintained. Section 4922. All necessary means shall be used, under the direction of the warden, to maintain order in the prison, enforce obedience, suppress insurrections and effectually prevent escapes, even at the hazard of life; for which purpose he may at all times command the aid of the officers of the institution and of the citizens outside of the precincts of the prison; and any citizen refusing to obey such command shall be held liable to such fines, penalties and forfeitures as apply to persons refusing to obey a sheriff or other officer calling upon the aid of the county to assist in serving a process or for quelling insurrection. [1873 c. 193 s. 42; R. S. 1878 s. 4922; Ann. Stats. 1889 s. 4922; Stats. 1898 s. 4922]
. . . .
 Escaped prisoners, now captured. Section 4930. The warden may adopt such measures as he may deem proper to aid in detecting and capturing escaped convicts. [1873 c. 193 s. 55; R. S. 1878 s. 4930; Ann. Stats. 1889 s. 4930; Stats. 1898 s. 4930]
Section 53.13, Stats. (sec. 4930, Stats. (1898)) was interpreted in 22 Op. Att'y Gen. 103 (1933), as allowing the warden to follow and recapture escaped prisoners without the need for a new arrest warrant, and allowing the warden to break into a house to capture the escaped prisoner if the warden has reasonable grounds to believe the prisoner is inside. Both the warden and his deputies were treated as peace officers in that opinion. *Page 355 
These statutes were combined into present sec. 53.07 in 1947. At that time, the following comment of the Interim Committee was made:
 Comment of Interim Committee, 1947: 53.07 is restated. The penalty is in effect the same. The penalty for failure to aid a sheriff in suppressing a riot is up to one year in jail or $500 fine; sec. 347.05. New 53.07 is so worded as to expressly cover Taycheedah and Green Bay prisons. The last sentence is from old 53.13. (Bill 35-A)
Thus, the history of sec. 53.07, Stats., although scant, indicates that the warden has traditionally held police powers very analogous to the sheriff or other peace officers. He held the powers to prevent escape, "even at the hazard of life," to pursue and forceably enter houses to recapture escapees, and to command the aid of officers of the institution and of persons outside the prison to aid him in his duties. Additionally, the penalty for refusal to obey the warden's commands was the same or similar to the criminal penalty of refusing to aid a peace officer. The wording of the original sec. 4922, Stats. (1898), held persons liable to the same extent as they would be for refusing to obey a sheriffs call for the aid of the county orposse comitatus.
This history leads me to conclude that the warden's powers, contained in sec. 53.07, Stats., insofar as they relate to pursuing and capturing escaped inmates, are comparable to a peace officer's powers.
My opinion is further based upon an analysis of statutes relating to the same subject matter as sec. 53.07, Stats.
Section 53.07, Stats., should be read in conjunction with secs.939.22 (22) and 946.40, Stats.:
 939.22 (22) "Peace officer" means any person vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes.
 946.40 (1) Whoever, without reasonable excuse, refuses or fails, upon command, to aid any person known by the person to be a peace officer is guilty of a Class C misdemeanor.
 (2) This section does not apply if under the circumstances the officer was not authorized to command such assistance. *Page 356 
In my opinion, these statutes are in pari materia and must be construed in such a manner as to harmonize with each other, if possible, and to avoid unreasonable or absurd results. In Matterof Estate of Walker, 75 Wis.2d 93, 248 N.W.2d 410 (1977).
A decision of the Wisconsin Supreme Court, which is instructive, is Madison v. Hyland, Hall Co., 73 Wis.2d 364,243 N.W.2d 422 (1976). That case turned on the construction of a statute and the definition of the word "person" in sec. 133.01, Stats. Respondents urged that "person" included the City of Madison and County of Dane, while appellants (Hyland, Hall Co.) contended that neither the City of Madison nor Dane County had standing since they were not a person within the statute or within sec. 133.04, Stats., which defines "person," as used in sec. 133.01, Stats., and does not include "bodies politic or corporate."
The Wisconsin Supreme Court looked to sec. 990.01 (26), Stats., which defined "person" as including all partnerships, associations and bodies politic and corporate. Stating that statutes relating to the same subject matter should be harmonized if possible, the court held that both respondents were bodies politic and corporate and, therefore, persons within the meaning of sec. 990.01 (26), Stats. Furthermore, "[r]eading these two sections together, we conclude that cities and counties are `corporations' within the meaning of sec. 133.04 and `bodies politic and corporate' within the meaning of sec. 990.01 (26). Thus, the city of Madison and Dane county are `persons' within the meaning of sec. 133.01." Madison, 73 Wis.2d at 371.
It is not unreasonable nor absurd to construe the warden as a peace officer for the purpose of maintaining order, enforcing obedience, suppressing riots, preventing escape and capturing escaped inmates. The analogy between these duties and the duties imposed upon a peace officer, by sec. 939.22 (22), Stats., is striking.
Further reenforcement is found in the comparison of the duty imposed upon citizens to respond to the command of the warden under sec. 53.07, Stats., of the sheriff, undersheriff and deputies under sec. 59.24 (1), Stats., and of peace officers under sec. 946.40, Stats. Section 46.05 (2), Stats., specifically delegates police powers to the warden and grants arrest powers, and further provides that employes named by the warden "shall possess the powers of constables." *Page 357 
The manifest object of sec. 53.07, Stats., is to give the warden the duty to maintain order, to prevent escapes and to capture escaped inmates. It is a well-established principle that an administrative agency possesses every power which is necessarily or reasonably implied in an express grant of power and which is indispensable to the exercise of the power expressly granted. 63 Op. Att'y Gen. 176 (1974). Therefore, it is my opinion that the warden is a peace officer when pursuing and capturing escaped inmates.
Under both common law and statutory law, a peace officer enjoys the right to command the assistance of citizens to varying degrees in carrying out his duties. For example, the kind of assistance which traditionally can be required by an officer, under the posse comitatus, is physical help in finding, stopping, arresting, and conveying a suspect to a place of detention. 62 Op. Att'y Gen. 174 (1973). A private citizen summoned to assist a peace officer in the performance of his duties has all the authority of a formally deputized officer of the law for the purpose at hand and may do any act necessary to promote or accomplish the assigned mission that he might lawfully do if he were the officer himself. Fisher, Laws Of Arrest, Traffic Institute, Northwestern University, 1967 (Donigan, ed.); ShawanoCounty v. Industrial Comm., 219 Wis. 513, 263 N.W. 590 (1935);Vilas County v. Industrial Comm., 200 Wis. 451, 228 N.W. 591
(1930); Krueger v. State, 171 Wis. 566, 177 N.W. 917 (1920). Our supreme court has held that a citizen has a duty to aid law enforcement officers in arresting fugitives or suppressing disturbances of the peace, and that such a duty clothes the citizen with the immunities and rights of a deputy. Kagel v.Brugger, 19 Wis.2d 1, 119 N.W.2d 394 (1963); West Salem v.Industrial Commission, 162 Wis. 57, 155 N.W. 929 (1916). In addition, sec. 968.07 (2), Stats., provides that a law enforcement officer, making a lawful arrest, may command the aid of any person and such person shall have the same power as that of the law enforcement officer.
46 Op. Att'y Gen. 280 (1957) discussed police powers of correctional staff members, stating that the department has the power to enact reasonable police regulations for the government of the institutions and adjacent open areas operated by it, and that institutional officers and employes have jurisdiction to enforce the law and make arrests for its violation within such areas. *Page 358 
It is my opinion that correctional staff, acting under direction of the warden, are peace officers within the institution and on institutional grounds by virtue of both secs. 53.07 and 46.05 (2), Stats. When correctional staff are commanded by the warden or his representative to enforce his duty to prevent escape and recapture escapees, they have peace officer status while pursuing such escapees. Correctional staff also enjoy the immunities and rights of a deputy under the doctrine ofposse comitatus, or secs. 53.07 and 968.07 (2), Stats., so long as the warden retains his current statutory status as a peace officer.
The warden and correctional staff are state employes and their jurisdiction is statewide when carrying out their mandate to capture escaped inmates. They may pursue inmates throughout the state and may arrest, after hot pursuit and otherwise, in any county of the state. This does not in any way affect or limit local peace officers' responsibility to pursue and arrest escaped inmates.
The answers to your specific questions are premised on the conclusion that the warden is a peace officer for the purposes described above and those acting at his command enjoy the immunities and rights of a deputized peace officer. Your detailed questions and my answers follow:
 1. What is the authority of non-deputized staff members to pursue escapees off-grounds of correctional institutions?
Section 53.07, Stats. The warden or superintendent may adopt proper means to capture escaped inmates. Based upon the above discussion, it is immaterial whether the warden or superintendent has been deputized by the sheriff or are acting with the inherent powers of their position.
 2. [M]ay [such staff] carry concealed weapons or unconcealed weapons?
Since they carry the same status as deputized peace officers, they may act in the same manner as a peace officer. They may carry unconcealed weapons and are not prohibited by law from carrying concealed weapons. For example, sec. 941.23 (1), Stats., prohibits any person, except a peace officer, from going armed with a concealed weapon. This answer is not meant to imply that the carrying and use of either concealed or unconcealed weapons should not be *Page 359 
strictly regulated by administrative rule to fit the particular circumstances which may arise. A peace officer or other person duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order. Only if the force used is more than reasonably necessary, under the circumstances, does it constitute an assault and battery. In the exercise of unreasonable force, both a peace officer and a private citizen, acting as a peace officer, may be liable, both civilly and criminally. Wirsing v. Krzeminski,61 Wis.2d 513, 213 N.W.2d 37 (1973); 6A C.J.S. Assault and Battery
sec. 27 (1975); Fisher, Laws of Arrest, supra, sec. 138. In addition, the use of firearms should be rigorously controlled due to their potential for harm. "Some acts such as shooting are so imminently dangerous as to anyone who may come within reach of the missle, however unexpectedly, as to impose a duty of prevision not far from that of an insurer." Palsgraf v. LongIsland R. Co., 248 N.Y. 339, 162 N.E. 99, 100 (1928).
 3. Do non-deputized staff have the authority to use state vehicles in high-speed chases of escapees?
Yes. However, as a general rule, a peace officer is personally liable for negligent or wrongful acts in the operation of a motor vehicle which cause personal injury or death. Annot., 60 A.L.R.2d 873 (1958), Police-Liability for Injury; Matczak v. Mathews,265 Wis. 1, 60 N.W.2d 352 (1953); 70 Am. Jur. 2d Sheriff, Police, andConstables sec. 50; 63 Am. Jur. 2d Public Officers and Employees
sec. 293; Kagel v. Brugger, 19 Wis.2d 1, 119 N.W.2d 394 (1963); hot pursuit — 61 Op. Att'y Gen. 419, 421 (1972); Carson v.Pape, 15 Wis.2d 300, 112 N.W.2d 693 (1961).
 4. Can deputized or non-deputized staff use their own cars to pursue escapees, whether state owned cars are available or not?
Yes. Care must be taken in the operation of the vehicle due to the personal liability issue addressed above. Just as a private citizen, who voluntarily assists peace officers, will be held liable for his negligent acts, so will a staff member who voluntarily uses his private vehicle. The issue, simply stated, is the exercise of due care under the circumstances in the operation of the vehicle.
You also ask whether my opinion would change if the non-deputized staff were acting under the supervision of either the sheriff's department of the county or a deputized correctional staff member. *Page 360 
Since it is my opinion that the staff are already deputized, or hold equivalent status, my answer would not change.
Two additional statute sections should be considered in response to this question. Section 59.24 (1), Stats., states, in part: "Sheriffs and . . . deputies shall keep and preserve the peace in their respective counties and . . . in the apprehending or securing any person for felony or breach of the peace they . . . may call to their aid such persons or power of their county as they may deem necessary." Section 59.21 (2), (5), Stats., states: "(2) He [the sheriff] may appoint as many other deputies as he may deem proper"; "(5) The sheriff or his undersheriff may also depute in writing other persons to do particular acts." Thus, if correctional staff members are deputized for the particular purpose of pursuing and capturing escapees, much of the above discussion becomes academic.
 5. Would there be any difference in your opinions as they are applied to the pursuit of juveniles in escape status?
One of the factors to be considered equally, in both adult sentences to imprisonment and juvenile commitments to a secured correctional facility, is the fact that both committees have been found to be a danger to the public. Section 48.34 (4m), Stats., provides that the judge may transfer legal custody, to the department administering corrections, of a juvenile adjudged delinquent for committing an act which would be a crime if committed by an adult, if the juvenile is found to be a danger to the public and in need of restrictive custodial treatment.
Although the analogy between criminal court proceedings and juvenile court proceedings has been rejected, In re Arley,174 Wis. 85, 182 N.W. 728 (1921), and the juvenile law is not to be administered as a criminal statute, Winburn v. State,32 Wis.2d 152, 145 N.W.2d 178 (1966), the fact still remains that a juvenile may be taken into custody when the child is committing, or has committed, an act which, if committed by an adult, would be a crime, sec. 48.19 (1)(d)3., Stats., or if the child has run away from his or her legal custodian, sec. 48.19 (1) (d) 4., Stats. Clearly, a juvenile may be apprehended, just as an adult may be arrested, for an escape from a secure correctional facility. *Page 361 
Therefore, my answers remain the same where the escapee is a juvenile.
DJH:SDE