CAYGILL and another, Plaintiffs and Respondents, v. IPSEN and another, Defendants: THOMPSON and another, Defendants and Appellants.

*April 27—June 1, 1965.*

580

For the appellants there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman* of Madison, and oral argument by *W. L. Jackman.*

· For the respondents there was a brief and oral argument by *Frank D. Hamilton* of Dodgeville.

HEFFERNAN, J.   We conclude that the complaint improperly joins two separate causes of action in that they do not affect both parties who have been joined as defendants. They require different places of trial, and are not stated separately. We rely on sec. 263.04, Stats., which provides:

"UNITING CAUSES OF ACTION. The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both. But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

If there is but a single cause of action stated by the plaintiff, the question of misjoinder does not arise. The plaintiff

*alleges* but one cause of action. If, however, more than one cause of action is in fact stated, the question of misjoinder of causes must be considered.

Judge CHARLES E. CLARK [3] has defined a cause of action as, ". . . a group of facts, but limited as a lay onlooker would to a single occurrence or affair, without particular reference to the resulting legal right or rights." [4] This definition Clark finds to be that most nearly approaching the code ideal. Looking at the facts alleged by the plaintiff in light of this definition of a cause of action, there is little doubt that two separate "occurrences or affairs" as a lay onlooker would view them, are alleged in the plaintiff's complaint.

Clark further defines a cause of action as, "a factual unit, whose limits are determined by the time and sequence and unity of the happenings, rather than . . . potential judicial action." [5]

The operative facts, not the consequences, are determinative of a cause of action. "It is the wrongful act, and not the injury, that creates liability." [6]

Applying these concepts, a cause of action must be viewed as a grouping of facts falling into a single unit or occurrence as a lay person would view them. This grouping of facts consists of "the defendant's wrongful act." It is apparent that here there are two such groupings or two distinct wrongful acts alleged, one by each defendant. There is no doubt, however artfully plaintiff's counsel has sought to

---

[3] Clark, Code Pleading (2d ed.), p. 130.

[4] Clark also points out that the concept of single "primary right," cherished in Wisconsin code pleading, is consonant with this rule. Ibid. page 130.

[5] Ibid. page 143.

[6] *Northern Finance Corp. v. Midwest Commercial Credit Co.* (1931), 59 S. D. 282, 285, 239 N. W. 242.

denominate it,[7] that the plaintiff's claim against Ipsen and Thompson are two separate and distinct causes of action irrespective of how the consequences have merged in the resultant injuries. In *Rogers v. Oconomowoc* (1962), 16 Wis. (2d) 621, 115 N. W. (2d) 635, this court concluded that "the accident" was the subject of the controversy that constituted a single cause of action.

The plaintiff resorts to the much used and quoted "primary right" definition of Professor Pomeroy and insists that but a single such right is asserted, the right to recover damages for an indivisible injury. However, the "primary right" of the plaintiff here is to be free from the tortious invasion of her person. What the plaintiff denominates as a "primary right" is the remedy or relief itself. Professor Pomeroy makes it clear that there are separate and distinct elements giving rise to judicial relief. The elements are:

". . . a primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself." [8]

The conduct of the defendants, Thompson and Ipsen, are two separate invasions of the right to be free from bodily harm; and, as a consequence, the accidents give rise to two separate causes of action.

---

[7] "We are not bound by the form of a pleading, but may consider the substance of the allegations thereof for the purpose of determining whether more than one cause of action is alleged therein." *Usow v. Usow* (1933), 213 Wis. 395, 401, 251 N. W. 458.

[8] Pomeroy, Code Remedies (5th ed. 1929), p. 528, sec. 347; and *State v. P. Lorillard Co.* (1923), 181 Wis. 347, 361, 193 N. W. 613.

Having reached this conclusion, we must now proceed to determine whether the causes are improperly joined. This court has previously determined that our statutes permit the joinder of causes when the following appears:

"The causes (1) must affect all the parties to the action; (2) must not require different places of trial; (3) must be separately stated."[9]

The plaintiff has violated the third requirement by not separately stating the causes of action. This, however, is not to be deemed a fatal defect subject to demurrer if the causes are in fact otherwise properly joined.[10]

Having found that separate causes of action had been pleaded, it follows that the action against Thompson cannot be tried in Dane county since the Thompson accident occurred in Grant county and Thompson is a resident of Dodge county, but the cause of action against Ipsen is properly brought in Dane county, where the accident occurred.[11] Hence, they require separate places of trial, and a joinder would violate the final requirement of sec. 263.04, Stats.

Moreover, the complaint violates the provisions of sec. 263.04, Stats., in that the defendant, Thompson, is not affected by the cause against Ipsen, or Ipsen by the cause against Thompson. The cause of action for the accident of August 21, 1961, affects only the defendant, Ipsen, while

---

[9] *Whaling v. Stone Construction Co.* (1958), 5 Wis. (2d) 113, 92 N. W. (2d) 278.

[10] *Gunderson v. Thomas* (1894), 87 Wis. 406, 58 N. W. 750. An intermixture of causes of action is, of course, subject to a motion to make more definite and certain.

[11] Sec. 261.01, Stats., provides as follows:

"PLACE OF TRIAL. Except as provided in section 220.12 and subject to the provisions for change of venue the proper place of trial of civil actions is as follows: . . .

"(11) *Auto Accident Actions.* Of an action growing out of the negligent operation of a motor vehicle, the county in which the cause of action arose or where the defendant resides."

the cause of action arising from the accident of January 9, 1962, affects only Thompson.

Our case law is replete with instances of judicial restatements of the simple statutory rule that each cause of action is to affect all parties to the action. In *Jordan v. Koerth* (1933), 212 Wis. 109, 248 N. W. 918, the plaintiff brought an action for false arrest. He subsequently amended his complaint to add an additional claim for damages against the original defendant and another person for a subsequent arrest. The court stated the rule (p. 112):

"There was thus united upon plaintiff's motion in one complaint a cause of action against one individual with a cause of action against that individual and another. The amendment was objected to and offends against the rule as fixed by the legislature in sec. 263.04, Stats., . . ."

This court in *Kamke v. Clark* (1955), 268 Wis. 465, 67 N. W. (2d) 841, 68 N. W. (2d) 727, pointed out that various defendants who had created a nuisance by the dumping of noxious refuse could not be joined in a single action at law since they were not joint tortfeasors. Unless the parties are joint tortfeasors, the cause of action against one is not a cause of action against the other, and each defendant is unaffected by the other asserted claims.

This, of course, is the gist of the plaintiff's position—that the defendants, by virtue of their contributing to an indivisible injury, are joint tortfeasors, and the joinder of them is not violative of sec. 263.04, Stats. If they are in fact joint tortfeasors, the law has long allowed joinder, since their responsibility to the defendant would be identical. In English law, joint tortfeasors are those who act in concert, and joinder is permitted only in those cases. It is not permitted, even when the torts are concurrent, if independent.[12] Certainly, the meaning of "joint tort" was originally

---

[12] Prosser, Law of Torts (2d ed.), p. 236, sec. 46.

the doing of a wrong through designedly concerted action. The theory was that those who share a common purpose and act together to do harm should be liable vicariously for the acts of each other. Our court, like that of most states, has ameliorated the English common-law rule that there can be joint liability only when there is concerted action by mutual or conspiratorial design. There are a number of cases where the independent acts of two defendants have concurred to produce a single and indivisible result, and in those cases joinder is permitted. Thus, where two automobiles collide and injure the plaintiff, joinder is permitted and both of the defendants can be sued in a single lawsuit.

We have also concluded that there may be an impleader of parties and a joint trial of the actions in malpractice cases when the injury sustained is a consequence of the original tort and the subsequent malpractice results in inseparable injuries and damages.[13] It should be noted, however, that these cases are easily distinguishable from the case at bar. Where the negligence of two tortfeasors concurs as to time and place and results in a single accident or occurrence, and the acts of the wrongdoers combine in a single force to produce injury, there is but one cause of action, and in accordance with our well-established rules of pleading, the defendants can be joined in a single lawsuit.

Some jurisdictions have allowed the joinder of consecutive tortfeasors in the chain reaction accident, a type of automobile collision that arises more and more frequently on our congested highways. Here, again, there is a substantial concurrence of the time factor, the successive collisions being only seconds or minutes apart.[14] Again, this is one event or occurrence in the eyes of the lay onlooker.

---

[13] *Heims v. Hanke* (1958), 5 Wis. (2d) 465, 93 N. W. (2d) 455; *Bolick v. Gallagher* (1955), 268 Wis. 421, 67 N. W. (2d) 860.

[14] *Maddux v. Donaldson* (1961), 362 Mich. 425, 108 N. W. (2d) 33, 100 A. L. R. (2d) 1, N. B. time lapse between the consecutive torts of 30 seconds. California: See *e.g., Eramdjian v. Interstate*

The recent cases that permit joinder of successive torts involve only an insignificant time lapse between them, not almost five months as in the case before us.

The malpractice cases and others like them present a different situation. They rest upon the theory that a tortfeasor is liable for foreseeable consequences of his act including the hazard that the injured party will be obliged to seek medical assistance and thus expose himself to the dangers of negligent medical care.

We conclude, therefore, that these cases are not joint torts giving rise to the right of joinder. In Wisconsin, where the joinder of consecutive tortfeasors has been permitted, the acts are either closely related in terms of time or else the subsequent torts were foreseeable as a consequence of the original wrongful act.[15]

We do not, by this opinion, rule out the possibility of joinder where the acts are consecutive but are closely enough related in a time sequence to constitute one event.

This case, however, presents a situation far removed from this hypothetical situation. The acts are not substantially concurrent, the events are unrelated, and the accidents took place in different counties. It would appear to be unreasonable under these circumstances to permit the joinder of wrongdoers whose tortious acts were separated by so great a time and distance. The fact that their conduct resulted in indivisible injury to the plaintiff does not under these circumstances result in creation of any relationship between them.

---

*Bakery Corp.* (1957), 153 Cal. App. (2d) 590, 315 Pac. (2d) 19, and *Cummings v. Kendall* (1940), 41 Cal. App. (2d) 549, 107 Pac. (2d) 282. Kentucky: See *e.g., Murphy v. Taxicabs of Louisville, Inc.* (Ky. 1959), 330 S. W. (2d) 395. Michigan: See *e.g., Meier v. Holt* (1956), 347 Mich. 430, 80 N. W. (2d) 207, and *Watts v. Smith* (Mich. 1965), 134 N. W. (2d) 194.

[15] *Kiviniemi v. American Mut. Liability Ins. Co.* (1930), 201 Wis. 619, 231 N. W. 252; *Wenzel v. Werch* (1949), 256 Wis. 47, 39 N. W. (2d) 721.

This court has consistently refused to allow the joinder of separate and unrelated torts though their *results* do concur to cause an individual injury to the plaintiff. Thus, in *Lull v. Fox & Wisconsin Improvement Co.* (1865), 19 Wis. 112 (*100), the plaintiff joined two defendants who at different times and on separate channels of the river erected dams. The plaintiff alleged that the two dams obstructed the flow of the river and caused the flooding of his land. The court stated (p. 113):

"Here are two distinct causes of action set out, one against the corporation defendant, the other against the other defendants. There is no allegation that all the defendants acted together in erecting or maintaining either or both of these dams; on the contrary, it is alleged they acted separately; each dam was erected and has been maintained by a part of the defendants without the aid or even approval of the others. We are at a loss to perceive how, by the well established rules of pleading, these causes of action can be united. It is argued that the result of the separate acts of the defendants in erecting and maintaining the dams is a joint result, the same as if all the defendants had been engaged in erecting and maintaining both dams. If it were so, it does not follow that the defendant or defendants who alone erected and maintained one dam, without any concert of action or connection with the defendant or defendants erecting and maintaining the other dam, should be held liable to pay the damages occasioned by erecting and maintaining both. The argument that there is difficulty in ascertaining the damage done or caused by the erection of each dam, or that it is impossible, is certainly no reason why one defendant should pay for the damages caused by another with whom he is in no way connected."

This can be a harsh rule. The plaintiff here is presented with the possibility that, failing in a joinder and a finding of joint liability, he could in successive lawsuits fail to prove that either of the defendants is liable for his damages. The problem has been posed thus:

". . . a question of social and judicial policy arises. Stated from a plaintiff's viewpoint, the problem is said to be whether the injured plaintiff shall recover nothing because he is unable to carry the 'impossible burden' of proving the respective shares of harm caused by each tortfeasor, or whether a tortfeasor may be required to 'pay more than his theoretical share of the damages accruing out of a confused situation which his wrong has helped to create.'

"Stated from a defendant's viewpoint, the question is whether the defendant 'will be forced to pay damages for injuries not shown to have been caused by his own wrongful act or by the act of another under such circumstances as to be attributable to him.' " [16]

Wigmore has stated that to allow wrongdoers to escape because of the plaintiff's inability to attribute specific causes and injury to each defendant is an example of the "law's callous dullness to innocent sufferers." [17]

The law is not indifferent to the plaintiff's dilemma, but the problem is not vastly different from that confronted by any plaintiff who is faced with difficulty of proving damages to a reasonable certainty even though the uncertainty may be occasioned by the conduct of the defendant.

"A classic statement of principle finds place in many opinions, as follows: 'The damages . . . must be certain, both in their nature and in respect to the cause from which they proceed.' " [18]

In any cause of action where the plaintiff cannot sustain that burden, he is doomed to failure. Damages must be proved with reasonable certainty. *Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 70 N. W. (2d) 577. Nor does mere difficulty of proof exonerate a plain-

---

[16] 100 A. L. R. (2d) 16, 32.

[17] Joint-Tortfeasors and Severance of Damages; Making the Innocent Party Suffer Without Redress, 17 Illinois Law Review (1922), 458.

[18] McCormick, Law of Damages, p. 97, sec. 25.

tiff from this burden. *De Sombre v. Bickel* (1963), 18 Wis. (2d) 390, 118 N. W. (2d) 868.

Under our present adversary system, there is always a possibility that an injured party may go uncompensated. However, the situation is not unlike the problem that arises when attempting to prove that an injury arose from a particular accident rather than from some other cause. *Smee v. Checker Cab Co.* (1957), 1 Wis. (2d) 202, 83 N. W. (2d) 492; *O'Donnell v. Kraut* (1943), 242 Wis. 268, 7 N. W. (2d) 889.

Our court has previously commented on a problem of similar difficulty:

"The contention that the jury could not distinguish the results between the negligence of the two parties is not without merit. But we apprehend it is no more difficult to separate the results of the two negligences than it often is to determine the results of defendant's negligence alone, or how much money will compensate for a given result in a particular case. Such difficulties are inherent in the subject matter dealt with, and courts and juries must wrestle with and solve them as best they can. In most cases there can be no mathematical or demonstrable certainty arrived at. Reasonable certainty is all the law requires and is all that can usually be attained." [19]

While we conclude that the causes of action arising out of these separate accidents cannot be joined, this is not to say that the parties are barred from producing evidence arising out of either accident in either lawsuit that may be brought against the defendants individually as proof of, or in mitigation of, damages.

*By the Court.*—Order reversed with directions to dismiss the complaint against the demurring defendant with leave on the part of the plaintiff to plead over.

WILKIE, J., took no part.

[19] *Schultz v. Tasche* (1918), 166 Wis. 561, 565; 165 N. W. 292.