Sue A. TAMMINEN and Leroy Tamminen, Plaintiffs-Appellants-Petitioners,

v.

AETNA CASUALTY & SURETY CO., a foreign corporation, Gundersen Clinic, Ltd., a Wisconsin corporation, Dr. William A. Kisken, and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Supreme Court

*No. 81–199. Argued October 5, 1982.—Decided November 30, 1982.*

(Also reported in 327 N.W.2d 55.)

For the plaintiffs-petitioners there were briefs by *Irving D. Gaines, Maureen S. Komisar* and *Irving D.*

*Gaines, S.C.*, Milwaukee, and *David G. Anderson* and *Garvey, Anderson, Kelly & Ryberg, S.C.*, of counsel, Eau Claire, and oral argument by *Mr. Gaines.*

For the defendants-respondents there was a brief by *Daniel T. Flaherty, Ellen M. Frantz* and *Johns, Flaherty & Gillette, S.C.*, La Crosse, and oral argument by *Daniel T. Flaherty.*

Amicus curiae brief was filed by *Thomas D. Bell* and *Doar, Drill & Skow*, New Richmond, for Wisconsin Academy of Trial Lawyers.

HEFFERNAN, J. This is a review of a decision of the court of appeals which affirmed a judgment of the circuit court for La Crosse county, DENNIS G. MONTABON, circuit judge, which held that the medical malpractice claim of the plaintiff, Sue A. Tamminen, was barred by the statute of limitations.

On this review three component issues are presented. The first question is whether there is a conflict between sec. 655.04(6), Stats. 1977, which provides that the applicable statute of limitations shall be tolled "until 30 days after the hearing panel issues its written decision," and sec. 655.19,[2] which provides that "any party to a panel hearing may, within 120 days after the date of an order made by a panel, commence an action for a trial in the circuit court." The second question is when the statute of limitations commences to run in a malpractice case when a portion of the negligence occurred more than three years before the commencement of the circuit court action but where it is alleged in the complaint and stated in affidavits submitted on summary judgment that the negligence was continuous during the entire course of treatment and a portion of the negligence occurred within the three-year period. The third question is whether

---

[2] All statutory references in this opinion are to the 1977 statutes.

an action in the circuit court may be maintained against the malpractice insurer and the Patients Compensation Fund when neither was made a party to the proceedings before the compensation panel.

We conclude, in agreement with the court of appeals, that there is no conflict between sec. 655.04(6) and sec. 655.19 and that both statutes must be complied with in order to commence a circuit court action.

We conclude that, where it is alleged and affidavits on summary judgment state that there is a continuing course of negligent treatment, but one cause of action or claim is stated; and, hence, if any portion of the continuing course of negligent treatment falls within the period of limitations, the entire cause of action is timely brought.

We also conclude that neither the insurer nor the Patients Compensation Fund need be joined in the proceedings before the compensation panel as a prerequisite to suing them in the circuit court. Because the court of appeals incorrectly concluded that the statute of limitations had run, we reverse its decision and remand the case for trial.

This case had its procedural origin when the plaintiff, Sue A. Tamminen, pursuant to ch. 655, subch. 2, Stats. 1977, filed a "submission of controversy" with the administrator of the patients compensation panel, claiming that Dr. William A. Kisken and the Gundersen Clinic of La Crosse were guilty of malpractice in that they were negligent in respect to surgical, medical, and hospital care services in connection with gastric bypass surgery performed upon Sue Tamminen on November 4, 1975.[3]

---

[3] Without attempting to reproduce in full the allegations of negligence contained in the submission, we note that salient items include: Failure to obtain an informed consent, failure to evaluate her suitability for surgery, failure to pre-operatively and post-operatively prophylactically treat her to eliminate the likelihood of infection, failure to recognize the onset of peritonitis, failure to properly treat the peritonitis, failure to timely call in

The "submission of controversy" was filed on October 30, 1978, and the final order of the panel was issued on September 26, 1979. The formal compensation panel decided that neither of the health care providers was negligent.

In accordance with sec. 655.19, Stats., a circuit court action was commenced by Tamminen on January 11, 1980, naming as defendants Kisken, the Gundersen Clinic, and Aetna Casualty and Surety Company, the health care providers' malpractice insurer. Subsequently, an amended complaint was filed on May 21, 1980, naming the Wisconsin Patients Compensation Fund as an additional defendant. The defendants moved to dismiss on the ground that the action was not commenced within the time permitted by sec. 893.205, Stats. and sec. 655.04 (6).[4] Sec. 893.205, when read with prefatory sec. 893.14,

---

appropriate consultants, failure to provide appropriate hospital care, and failure to timely perform laboratory tests. It was alleged that claimant's life was endangered while in the hospital, that the negligence produced peritonitis and other complications that have never been corrected, that she has sustained disfiguring scars, and that she has developed metabolic problems. It was alleged that the purported acts of negligence occurred between November 3, 1975, and March 30, 1976, when she was a patient of Dr. William A. Kisken, the Gundersen Clinic, and the La Crosse Lutheran Hospital.

[4] "893.205   Within 3 years.   Within 3 years:

"(1) An action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955, unless notice in writing as provided in s. 330.19(5), 1955 statutes, was served prior to July 1, 1959, in which event s. 330.19(5), 1955 statutes, shall apply. But no action to recover damages for injuries to the person, received without this state, shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or country in which such injury was received unless the person so injured shall, at the time of such injury, have been a resident of this state.

"(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another where death resulted on or after July 1, 1955.

requires that actions to recover damages for injuries to the person be commenced within three years after the cause of action has accrued. Sec. 655.04 (6) tolls that applicable statute of limitations upon the filing of a submission of controversy with the patients compensation panel and further provides that the statute of limitations shall remain tolled until thirty days after the hearing panel issues its written decision.

Irrespective of when the statute of limitations would otherwise have run, Tamminen contends that her filing of a circuit court action on January 11, 1980, one hundred eight days after the panel's decision, was the timely bringing of her malpractice action. Tamminen asserts statute of limitations; and she argues that, because under that sec. 655.19, in addition to sec. 655.04 (6), tolls the no view was her cause of action time-barred when she commenced the proceedings before the compensation panel, she had one hundred twenty days after the panel order to commence an action in the circuit court. Sec. 655.19 provides:

"655.19 **Court trial.** Unless the parties have stipulated in writing under s. 655.07 to be bound by the panel determination, any party to a panel hearing may, within 120 days after the date of an order made by a panel, commence an action for a trial in the circuit court for the county designated in the submission of controversy under s. 655.04. . . ."

It is conceded by all parties that, when Tamminen filed her submission of controversy with the patients com-

---

"(3) Any civil action arising under ch. 11 or subch. III of ch. 13."

"655.04 **Patients' claims.**

". . .

"(6) STATUTE OF LIMITATIONS. The filing of the submission of controversy shall toll any applicable statute of limitations, and such statute of limitations shall remain tolled until 30 days after the hearing panel issues its written decision, or the jurisdiction of the panel is otherwise terminated."

pensation panel on October 30, 1978, four days remained before the statute of limitations ran out on the earliest claimed negligent act of the defendant Kisken, the surgery performed on November 4, 1975. Tamminen asserts that, under sec. 655.19, having made a timely submission to the panel, she had one hundred twenty days following the panel's final order of September 26, 1979, to commence her malpractice action in circuit court. If, however, as the trial court and the court of appeals concluded, sec. 655.19 did not toll the period of limitations, then the statute of limitations was tolled for only thirty days following the panel's decision and the action would have had to be commenced within thirty-four days thereafter (including the plaintiff's credit for the four days that had not expired at the time of submission). Because the action was not commenced until January 11, 1980, the court concluded that the statute of limitations had expired as to all negligent acts or omissions which occurred prior to January 12, 1976.[5]

---

[5] To explain the trial court's computation, we reproduce footnote 1 in the court of appeals' decision, 105 Wis. 2d at 417:

[1] The trial court, in its memorandum decision, arrived at the January 12, 1976, date by using the following analysis:

Therefore, the proper approach to this case is to count backward three years from the date of filing adding any tolled periods, not to look for a single date on which the statute of limitations began to run. Any cause of action accruing during this period, may properly be maintained. Any claims based on omissions of a continuing nature which took place during this period may not be dismissed. Conversely, any cause of action accruing before this date may not be maintained and a claim based on omissions occurring before this date must be dismissed. Therefore, the analysis is as follows:

1. Statutes of limitations tolled for following periods:
a. October 30, 1978–September 26, 1979
   (Sec. 655.04(6) Wis. Stats.).                         331 days
b. Additional 30 days (Sec. 655.04(6) Wis. Stats.)        30

Although we disagree with the trial and appeals courts' determination of when the three-year period of limitations commenced to run, we are in accord with the conclusion of both courts that only sec. 655.04(6) tolls the statute of limitations and that sec. 655.19 serves a separate purpose—that of giving finality to a panel decision after one hundred twenty days even though the period of limitations would not expire until later. Both statutes must be complied with.

Chapter 655 requires that an aggrieved patient file a malpractice claim with the administrator of the patients compensation panel prior to the bringing of any court action. *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 261 N.W.2d 434 (1978). Sec. 655.04(6) provides that, when a claim or submission of controversy is filed with the administrator, the applicable statute of limitations ceases to run. Moreover, the statute of limitations is tolled or remains suspended until thirty days after the hearing panel issues its written decision. After that thirty-day period, the statute again commences to run.

The effect of the statute is that the limitations period cannot run out while the controversy is before the panel, and a claimant is thereafter given a thirty-day grace period plus the time which remained on the period of limitations at the time of the filing.

| | |
|---|---|
| c. Service by mail (Sec. 801.15(5) Wis. Stats.) | 3 |
| Sub-total 364 days | 364 days |

2. Sec. 893.205 Wis. Stats—3 years—0 days
Total 3 years + 364 days.

3. Complaint filed in this case on January 11, 1980.

4. Therefore, any actionable negligence must have occurred on or after January 12, 1976 to be maintained on this case. Any negligent acts or omissions by the defendants prior to January 12, 1976 are barred by the applicable statutes of limitations.

Although the meaning of this statute is clear on its face, the plaintiff claims that sec. 655.04(6) conflicts with sec. 655.19, which provides in the part relevant to this controversy:

". . . any party to a panel hearing may, within 120 days after the date of an order made by a panel, commence an action for a trial in the circuit court . . . ."

Tamminen argues that this latter statute extends the period of limitations so that a plaintiff who has filed with the panel before the three-year period has run will always have one hundred twenty days after the panel order to commence a circuit court action no matter how little of the three-year limitations period remains when the submission of controversy was filed. Under the plaintiff's theory, a filing made with the panel on the last day of the period of limitations would be sufficient not only to allow the submission to the panel, but would also assure the claimant one hundred twenty days following the panel's written decision to commence a court action. Both the trial court and the court of appeals properly determined that this view was erroneous.

We have frequently said that courts should avoid finding conflict between statutory provisions unless the conflict is clear. We stated in *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 553, 150 N.W.2d 137 (1967):

"It is a cardinal rule of statutory construction that conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed."

We find no conflict nor even an implied incongruity between these statutes. Sec. 655.04(6) specifically refers to the statute of limitations and its tolling. Sec. 655.19 does not address the question of limitations, and by no stretch of the imagination can there be any reasonable

implication that the statute of limitations was the concern of the legislature when sec. 655.19 was addressed. The statute is plain on its face that the action must be commenced within one hundred twenty days after the date of an order made by a panel. It is, however, hornbook law that no action can be brought after a period of limitations has run.

The one-hundred-twenty-day period set forth in sec. 655.19 serves the purpose of giving finality to a panel's decision.[6] It is similar to the time limits imposed by the statutes where an appeal is sought to be taken from a final order or judgment entered by the circuit court. Those time limits are jurisdictional; and no matter how much time might remain on the period of limitations from the original injury, a putative appellant is foreclosed from further review if the jurisdictional time limits for appeal are not met. Moreover, sec. 655.19 is equally applicable to a health care provider who may be dissatisfied with the order of the panel. A health care provider who has lost before the panel can bring an action within one hundred twenty days to upset the panel determination, but a health care provider is foreclosed from any recourse in the circuit court if an action is not brought within the time period of sec. 655.19. A health care provider is not subject to any statute of limitations, because it has no cause of action in the sense that an injured plaintiff has. Yet, as a party to a panel proceeding, the health care provider is subject to the final order of a patients compensation panel unless it commences an

---

[6] That this is the legislative intent is demonstrated by sec. 655.-20, which provides that:

"After the passage of time for petitioning the circuit court for a trial under s. 655.19 has passed [120 days], any party may file a certified copy of the order containing the award with the circuit court for the county of residency of any respondent named in the order, and the court *shall* then render judgment in accordance with the order." (Emphasis supplied.)

action in circuit court. It is therefore clear that sec. 655.19 is irrelevant to a statute of limitations. Its only purpose is to establish the finality of a panel's order when a court action is not commenced within the one-hundred-twenty-day period.

Although the plaintiff argues that the different periods of time set forth in secs. 655.04(6) and 655.19 constitute a trap for the unwary, we do not see it as such, because each statute may be complied with without violating the other. Each statute deals with a different prerequisite to commencing an action. Nor, as the plaintiff argues, is sec. 655.04(6) necessarily more restrictive than sec. 655.19. For example, if a claimant files a submission with a panel at a time when there is still two years to run from the accrual of the cause of action, sec. 655.04(6) would allow two years plus thirty days after the panel decision to commence proceedings in the circuit court. Yet, under sec. 655.19, court action must be commenced within one hundred twenty days after the panel's decision, hence restricting the time within which action could be brought. These two statutes, though dealing with different time frames, when considered together serve the purpose of expediting and terminating malpractice litigation in a timely fashion.

Although we have not previously addressed the alleged conflict between the statutes, we referred to both of them in *Mortenson v. Miller*, 99 Wis. 2d 209, 218, 298 N.W.2d 546 (1980). Therein we said:

"Plaintiff commenced his action in circuit court within thirty days of the adverse determination by the patients compensation panel, the time during which the statute of limitations was tolled, sec. 655.04(6), Stats., and within the 120-day period permitted by sec. 655.19, Stats."

This statement in *Mortenson* foreshadowed our present holding that both sections of the statutes apply and do not conflict. The statute of limitations is tolled from

the date of the filing of the submission of controversy until thirty days after the panel decision, but sec. 655.19 limits the time for the commencement of action to one hundred twenty days after the panel decision.

Although the legislative history at the time patient compensation panels were created in 1975 is not persuasive one way or the other, the plaintiff argues that subsequent legislative activity shows that the legislature has recognized that secs. 655.04(6) and 655.19 conflict.

We do not so interpret the recent proceedings in the legislature, which have been brought to our attention by the plaintiff. 1981 Assembly Bill 537, as amended, proposed to change the time period of both sections to ninety days. However, there is nothing in the Legislative Reference Bureau's analysis of the bill which indicates that the change was proposed because of a conflict between the statutes. All the bill proposed was to make the periods under secs. 655.04(6) and 655.19 coincide at ninety days. This bill, were it passed, would have the effect of reducing the period within which action could be brought by thirty days.

For a party who has made an early submission to a compensation panel the period during which the action can be commenced is thus reduced by the proposed change in sec. 655.19. For a patient whose period of limitations has almost expired at the time of submission, an additional sixty days is granted him in which to bring the action by the proposed change in sec. 655.04(6). Under either the present or proposed law, action must be commenced at the latest within the period following the panel order as determined by the legislature in sec. 655.19. If the legislature should establish a period under sec. 655.19 that is the same as that for the tolling of limitations pursuant to sec. 655.04(6), then, of course, both statutes will prescribe the same extreme time limits within which an action can be commenced. The legisla-

tion may be improved by the proposed amendments, and an erroneous reading might be less likely to occur, but the change is irrelevant to whether or not there is a conflict in the present statutes. We take judicial notice that the bill has not received final passage.

We conclude, therefore, that, under the law as it now exists, for Tamminen to be timely in the commencement of her circuit court action, the action must have been brought before one hundred twenty days had passed following the court's decision and before her claim was extinguished by the running of the period of limitations. There is no conflict between secs. 655.04(6) and 655.19. They address different aspects of the right of a party to a panel proceeding to commence an action in the circuit court.[7]

The court of appeals affirmed the trial court's summary judgment, which was granted on the theory that the statute of limitations barred any cause of action for any act of negligence which occurred prior to January 12, 1976. This time computation, which has been set forth earlier in this opinion, was based upon the theory that each act of negligence specifically alleged in the complaint or set forth in the affidavits on summary judg-

---

[7] The plaintiff additionally asserts that the letter of the lawyer-chairman of the compensation panel estops the Fund from asserting that the action was not timely brought. The letter to the administrator, copies of which were sent to counsel, recited:

"The date you distribute the copies by mail to respective counsel will be the date upon which the 120-day period for commencement of Circuit Court action commences."

Because no copies were ever distributed, plaintiff argues that even now the time has not run. In view of our conclusion that action was timely brought, the question of estoppel is moot. But we venture the assertion that experienced counsel for the plaintiff should not have been misled. Reasonable counsel would not rely upon a document of this nature which only partly recited the statutory requirements.

ment constituted a separate cause of action and, hence, that any of the causes of action which arose prior to January 12, 1976, were barred by the statute. If this theory is correct, then the malpractice that ensued at the time of the original surgery on November 4, 1975, the negligence that occurred in respect to failure to detect peritonitis (which the plaintiff averred should have been detectable before November 14, 1975), and the negligent failure to call in a specialist to treat the peritonitis before December 3, 1975, would be barred by the statute of limitations. Because it was the plaintiff's contention that but one cause of action arose as a result of a continuous course of negligence from the time of Tamminen's admission to the hospital on November 2, 1975, until the date she was discharged from her last hospitalization, the plaintiff has taken an appeal from the summary judgment, which, if sustained, would exclude a portion of the cause of action or split the cause of action, allowing only a relatively insignificant portion of her claim to be tried.

The plaintiff bases her appeal upon the theory that this court should affirm and restate the continuous-treatment doctrine, which she contends we have adopted, at least by implication, in the early case of *Lotten v. O'Brien,* 146 Wis. 258, 131 N.W. 361 (1911).

Before we address the theory of the case on which the plaintiff wishes us to proceed, it is necessary, however, to determine whether summary judgment was properly granted. The court's duty where a motion for summary judgment is presented is set forth in sec. 802.08(2), Stats.[8] That statute provides that summary judgment shall be rendered when no genuine issue as to any mate-

[8] ". . . The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

rial fact exists and the moving party is entitled to judgment as a matter of law. This court in *Grams v. Boss,* 97 Wis. 2d 332, 294 N.W.2d 473 (1980), pointed out the procedure to be used in arriving at that conclusion. The court in that case stated:

"The court must initially examine the pleadings to determine whether a claim has been stated and whether a material issue of fact is presented. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's (in this case the defendants') affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party (plaintiffs in this case) to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." P. 338.

The plaintiff stated a cause of action in her amended complaint. The defendants in their affidavit state that the plaintiff made no claim of any negligent act or omission on the part of any of the defendants which occurred after December 3, 1975. If this affidavit were uncontroverted, it would be clear that the defendants posed a *prima facie* defense based on the three-year statute of limitations, which would entitle them to summary judgment. However, in the counter-affidavit filed by the plaintiff, it is stated that the negligent acts and omissions on the part of the defendants occurred throughout the period of continuous treatment from November 3, 1975, through March 30, 1976. The affidavit further states that, although specific acts of negligence itemized by the defendants in their affidavit were alleged and

averred, at no time did the plaintiff allege that no acts of negligence occurred after December 3, 1975, but rather that she specifically has alleged and averred that the acts of medical negligence by the defendant health care providers occurred continuously during the period of treatment from admission until March 30, 1976. Accordingly, the affidavits reveal a disparity in the facts. The significance of this disparity rests upon whether the issue is a material one. The trial judge apparently concluded that it was not, and the court of appeals failed to make the determination required under the summary judgment statute.

The plaintiff argued in the trial court that the statute of limitations should not begin to run until the health care providers' negligence ceased. The trial court did not entirely reject the plaintiff's argument or the evidence of her affidavits, but relied upon the theory, for which it could find support in Wisconsin law, that each day on which there is a negligent act or omission commences the running of a period of limitations on a new and different cause of action.

Under the trial court's reasoning, the statute of limitations begins to run each day for the negligent acts or omissions which occurred on that day. Thus, the trial court determined that the statute of limitations barred the plaintiff's cause of action with respect to most of the alleged negligence, while it did not bar an action for negligent acts or omissions that fell within the period subsequent to January 12, 1976. Under the trial court's view of the law, the factual disparity was not relevant, for it considered each act of negligence as a separate cause of action. The plaintiff argues that she is within the statute of limitations for all the acts of negligence during the entire course of the treatment. She relies on what she calls the continuous treatment rule, and she defines that rule as one which provides that the statute

of limitations for medical malpractice actions commences to run from the last day the plaintiff receives treatment from the defendant health care provider for the same or related condition as that which is the subject matter of the complaint. Hence, in light of plaintiff's theory, and the different theory that we adhere to in this opinion, whether or not there were continuing acts of negligence during the entire course of treatment until March 30, 1976, is material.

As the plaintiff states, the rule of the doctrine of continuous treatment is that, if there has been negligence and the negligent health care provider continues to treat the plaintiff for the condition resulting from the negligence, the statute of limitations does not begin to run until the last day that the plaintiff was treated for that condition. The plaintiff distinguishes that doctrine from the doctrine of termination of relationship.[9] Under the latter theory, the statute of limitations would not commence to run as long as the doctor-patient relationship continued, even though a portion of the treatment or the last day of it had nothing to do with the condition relevant to the alleged negligent acts. *See,* Louisell & Williams, *Medical Malpractice,* Vol 1 (1981) 13–32 ff.

The plaintiff claims that this court, impliedly at least, has recognized and approved of the continuous-treatment doctrine in the case of *Lotten v. O'Brien, supra.* In *Lotten,* the plaintiff alleged that the defendant physician had negligently set his broken arm on August 24, 1908, and negligently treated it on several occasions thereafter. The last treatment was on September 26, 1908. Action

---

[9] Defendants contend that this court has rejected the continuous-treatment doctrine in *Boehm v. Wheeler,* 65 Wis. 2d 668, 223 N.W.2d 536 (1974). This is incorrect. Putting aside the fact that *Boehm* was not a medical malpractice case, it is apparent that *Boehm* rejected the termination-of-relationship doctrine. What therein was called the continuous-treatment doctrine was clearly a misnomer.

was commenced on November 13, 1909. The then exist-
ing one-year statute of limitations was pleaded as a bar
to the action. The court stated that the alleged acts of
negligence took place not later than September 26, 1908,
when the treatment ceased. Because the last treatment
took place more than one year prior to the commence-
ment of the action, the court merely took the easy way
out in resolution of the statute-of-limitations question
when it stated that no negligence could have occurred
within one year of the commencement of the action. In
*Lotten*, it did not matter whether the statute ran sepa-
rately on the negligent setting of the arm or whether the
entire cause of action under the continuous-treatment
doctrine accrued on September 26, 1908, because no neg-
ligence whatsoever was alleged to have occurred within
a year prior to the commencement of the action.

*Lotten* is simply irrelevant to the theory propounded
by the plaintiff here, since even had an act of negligence
occurred on September 26, 1908, it would have been
barred by the statute of limitations. There is no intima-
tion in that opinion that, had the September 26 date been
within the period of limitations, the continuous-treatment
doctrine would have been applied. *Lotten* has never been
cited in this state for the proposition urged by the
plaintiff and, to the extent that it has been cited else-
where for the continuous-treatment doctrine, we deem
those citations to be in error.

The continuous-treatment doctrine has not been recog-
nized in Wisconsin. Nor do we do so in this opinion. The
problem posed by the continuous-treatment doctrine is
not before us, because the affidavits show that the plain-
tiff asserts facts which are beyond the minimum require-
ments of those states which have adopted the continuous-
treatment doctrine. Under the continuous-treatment doc-
trine, the mere fact that there has been continuous treat-
ment, whether negligent or not, for a condition occa-

sioned by a prior negligent act, is sufficient to start the statute of limitations running only at the end of the course of treatment. In the instant case, as we see the facts set forth in the affidavit of the plaintiff, negligence continued throughout the entire course of treatment up to and until the plaintiff was discharged on March 30, 1976.[10]

Although some states have followed the rule that the continuous-treatment doctrine applies whenever there has been negligence at any time during the course of treatment, irrespective of whether there was negligence subsequent to the original malpractice, other states hold that the statute of limitations only begins to run when the continuing negligence ceases. It is the latter type of case that is revealed in Tamminen's affidavits.

In *Hotelling v. Walther*, 169 Ore. 559, 130 P.2d 944 (1942), the court held that, where there was continuous negligence following the extraction of a wisdom tooth, the statute of limitations did not commence to run until the negligent conduct, which was a part of a continuum, ceased. The court stated:

"The alleged negligent treatment of the plaintiff must be considered as a whole. Plaintiff was not obliged to split his cause of action. The continued negligent treatment constituted but a single cause of action. Where the tort is continuing, the right of action is continuing." P. 565.

Thus, the plaintiff was able to maintain his action for the entire negligent course of conduct even though some of the acts of negligence, if considered separately and not a part of a continuum, would have been barred by the statute of limitations.

---

[10] Although plaintiff's assertion of negligence is somewhat nebulous, we are obliged to construe the facts asserted most favorably to her, because she is resisting defendants' motion for summary judgment. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980).

Virginia follows a similar rule. *Farley v. Goode,* 219 Va. 969, 252 S.E.2d 594 (1979), held that, when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action accrues, and the statute of limitations begins to run when the improper course of examination and negligent treatment for the particular malady ceases.

In *Farley,* there was a two-year statute of limitations applicable to personal injuries. Yet, the court found that, although plaintiff's action was not commenced until November 19, 1976, her action was timely in respect to negligence which occurred as early as 1971, because there was a continuing course of negligent treatment. It distinguished this from a situation where the medical malpractice complained of constituted a single isolated act. In such a situation, it acknowledged that the statute of limitations runs from the date of the act and injury.

The Virginia court followed the same line of reasoning in *Fenton v. Danaceau,* 220 Va. 1, 255 S.E.2d 349 (1979). In the latter case the plaintiff underwent negligently performed surgery for a congenital abnormality to the cervical spine in 1971. Then in 1972, on a date which was within the Virginia two-year statute of limitations, additional surgery to correct the same condition was undertaken, and it was alleged that the second surgical procedure also was not consistent with good surgical practice. The Virginia court held that, because the negligence continued for a related or identical condition and the treatment was substantially uninterrupted, there was but one cause of action, and, accordingly, the first surgery, which had occurred more than two years prior to the commencement of the suit, was cognizable by the court as a part of a single cause of action because the

related negligence continued within the period of limitations.

It would appear that these cases are more consistent with the facts stated by the plaintiff in this case than those which satisfy the continuous-treatment doctrine. Under the law of Oregon and Virginia, where there is a continuum of negligent medical care related to a single condition occasioned by negligence, there is but one cause of action; and if any act of negligence within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split his cause of action but may bring suit for the consequences of the entire course of conduct.

We conclude that the rationale of the Oregon and Virginia cases is consistent with the Wisconsin theory of a cause of action.

In *Caygill v. Ipsen,* 27 Wis. 2d 578, 135 N.W.2d 284 (1965), we discussed the meaning of the term, "cause of action," or, to use the term employed in the revised Code of Civil Procedure, a "claim for relief." Sec. 802.02 (1), Stats. *In Caygill v. Ipsen,* relying upon the definition of Judge Charles E. Clark, we said a cause of action was " 'a factual unit, whose limits are determined by the time and sequence and unity of the happenings . . . .' " P. 582.

Clark, in his treatise on *Code Pleading* (West, hornbook series 2nd ed. 1947), discusses on pages 472 ff. the meaning of the code expression, "cause of action," which we consider to be substantially equivalent to the present statutory terminology, "claim for relief." He states:

"[T]he controlling consideration in determining the extent of the cause should be trial convenience, with much discretion accorded the trial court." P. 477.

We have taken a similar approach to the question of whether a complaint states more than one cause of

action where there has been a contention that there was a misjoinder of causes. In *Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 243 N.W.2d 422 (1976), we relied upon the *Caygill* rationale and quoted *Ewing v. General Motors Corp.*, 70 Wis. 2d 962, 236 N.W.2d 200 (1975). We said, citing *Ewing* at page 967:

" '[T]here is only one cause of action if there is only one grouping of facts falling into a single unit or occurrence as a lay person would view them.' "

The problem in *Hyland, Hall* was whether a series of contracts alleged to be in violation of the state antitrust laws, which were entered into beginning in about 1958 and continuing until at least 1969, constituted a single cause of action. We held that but a single cause of action was stated if there is a grouping of facts which would fall into a single unit as a lay person would view them.

It is apparent that the rationale which this court has utilized in determining whether or not there is a single cause of action in misjoinder cases is identical to that employed by the Oregon and Virginia courts where there is a continuum of negligent conduct. It is also consistent with the Wisconsin case of *Oosterwyk v. Bucholtz*, 250 Wis. 521, 27 N.W.2d 361 (1947), where we held that a cause of action for false imprisonment accrues when the imprisonment terminates and, therefore, the statute of limitations begins to run only when the imprisonment ends. In *Oosterwyk*, we treated the period of imprisonment as a unit. Also, in *Milwaukee County v. Schmidt, Garden & Erikson*, 43 Wis. 2d 445, 168 N.W.2d 559 (1969), the court implied, albeit in dicta, that a claim for negligent supervision of construction could have been maintained if any of the related acts of negligent supervision had occurred within six years prior to the court action.

In *Frechette v. Ravn,* 145 Wis. 589, 130 N.W. 453 (1911), a malpractice action was brought against a physician for negligently amputating one hand of an injured patient and subsequently negligently setting the bones in the other injured hand. The opinion indicates that these acts occurred at different times. The plaintiff brought two causes of action. The court said:

"The plaintiff has divided what is probably a single cause of action . . . . The wording of the two causes of action differs only in the recital of the character of the injuries, and both causes of action fall within the same category. . . . we will treat the complaint as though it contained but a single cause of action." P. 590.

We conclude that a situation such as that alleged in the complaint and set forth in the plaintiff's affidavits in the instant case is consistent with this court's theory of pleading—that there was but a single unit of negligent treatment, both surgical and remedial, from the time Sue Tamminen was admitted to the Gundersen Clinic for examination until the time she was discharged from her hospitalization on March 30, 1976. It is averred that the tortious conduct did not cease until that latter date; and, accordingly, the statute of limitations for that entire course of conduct, a unitary episode as it is reasonably viewed, does not commence to run until the tortious conduct ceases. Because a cause of action is not to be split, the plaintiff is entitled to have the entire cause of action adjudicated if the action is timely brought, measuring that timeliness from the last negligent act in the related continuum of malpractice.

This view of when the cause of action accrues is entirely consistent with prior Wisconsin cases in respect to

pleading and in respect to the statute of limitations.[11] A cause of action accrues only when the cause of action is complete; and where, as here, it is averred in the affidavits that the negligent acts of malpractice were continuous, the cause of action is not complete until the last date on which the malpractice occurred. If an action is timely brought in relationship to that last date, the entire cause of action is within the jurisdiction of the court. Accordingly, plaintiff's commencement of the action was timely.

The period of negligent treatment ran from November 3, 1975, to March 30, 1976. The controversy was submitted to the patients compensation panel on October 30, 1978. At that point, two years and two hundred fourteen days had elapsed following the date of last negligent treatment. At the time of the submission of controversy one hundred fifty-one days remained before the

[11] In *Peterson v. Roloff*, 57 Wis. 2d 1, 6, 203 N.W.2d 699 (1973), we capsulized the competing policies involved in the determination of when a statute of limitations should commence to run:

"(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained."

The public policy dilemma which we addressed in *Peterson* involving the "discovery" of an act of negligence that occurred at a substantially earlier time is not presented in the present case. In the instant litigation the facts are not stale, the defendants have available and have presented all the medical facts that could be produced for their defense, the alleged disability was continuing, and if the facts stated by the plaintiff are to be believed, the plaintiff has been diligent in pursuing her claim for redress. She has brought her claim based on a continuous course of action within the period of limitations. The problems which confronted this court in the discovery cases, such as in *Peterson, supra,* or in *Olson v. St. Croix Valley Memorial Hospital, Inc.,* 55 Wis. 2d 628, 201 N.W.2d 63 (1972), are not present in the instant case.

period of limitations expired. Because the panel decision was issued on September 26, 1979, the period of limitations did not re-commence running until thirty days thereafter. Thus, on that date, when the period of limitations again commenced to run, the plaintiff had one hundred fifty-one days in which to commence the action insofar as the statute of limitations was concerned. Because of the provisions of sec. 655.19, however, she was obliged to bring her action one hundred twenty days after the date of the panel decision. The action in fact was commenced on the one hundred eighth day. The action was timely brought. Both the statute of limitations and the rule of sec. 655.19 requiring commencement of suit within one hundred twenty days of the panel decision were satisfied. The summary judgment based on the statute of limitations rationale must be reversed.

We hasten to add, however, that it is incumbent upon the plaintiff to prove at trial that negligence persisted until March 30, 1976. On summary judgment the interpretation of the affidavits is designedly skewed to favor the party opposing summary judgment. That, however, does not relieve Tamminen of her burden of proof to show negligence which in fact persisted until the date she now asserts. Moreover, we are cognizant of the fact that the formal panel found no negligence on the part of the health care providers. Their basic negligence is unproved. By concluding that this action was timely brought, we merely give the plaintiff the opportunity to prove her allegations at trial. Upon the submission of proof it is not impossible that a motion to dismiss based upon the statute of limitations can be reasserted. We have in this opinion assumed, as we must, that there is an issue of fact in respect to when the negligent conduct ceased. We have pointed out that the factual question is material, but the resolution of the question can only be had on the basis of the evidence at trial.

We have not discussed the separate cause of action asserted by Leroy Tamminen, because his claim for loss of consortium, comfort, and society is dependent upon the viability of the claim asserted by his wife, Sue A. Tamminen.

The defendants Aetna Casualty and Surety Company and the Patients Compensation Fund also assert that the court action against them should be dismissed because they were not named in the submission of controversy filed with the compensation panel. The question was not addressed by the trial court; and the court of appeals, we conclude, incorrectly disposed of the question when it stated:

"Tamminen's action against Aetna and the Fund was properly dismissed because their liability is to insure the health care providers, Gundersen and Kisken, who were determined not negligent by the panel. Because the health care providers are not liable, Aetna and the Fund, as their insurers, are not liable." 105 Wis. 2d at 424.

The implication of the court of appeals' statement is that the insurers could not be found liable simply because the panel found the health care providers not negligent. This is incorrect. The health care providers could be found negligent in a trial *de novo* regardless of what the panel found; and then, of course, the insurer and the Fund would be liable to the extent of their contractual or statutory obligations. Only if no such liability were imposed on the health care providers could either the Fund or the insurer escape liability. An insurer and the Fund are proper parties to be joined where a patient seeks a trial *de novo*.

Nor is it necessary to have named them in the submission of controversy. Sec. 655.04(1) sets forth the information required in the submission of controversy to the patients compensation panel. Health care providers are required to be named, but the statute imposes no such

requirement in respect to an insurer or the Patients Compensation Fund. Moreover, sec. 655.04(3) is silent on giving notice of filing of the submission of controversy to either the Fund or an insurer. Only the named health care providers are required to be served.

The defendants rely upon sec. 655.27(5) as an indication that the insurer and the Fund must be joined in the "submission of controversy" if they are to be named in the circuit court action. But sec. 655.27(5) clearly refers to the post-panel proceedings in circuit court, not to the determination following the submission of controversy. Sec. 655.27(5) relates to filing an "action." It also provides that recovery can be had against the Fund only if the Fund is named as a defendant in the "suit." The proceeding before the panel is not a suit and it is not an action, nor is any party in the submission of the controversy proceedings before the panel denominated as either a plaintiff or defendant. They are designated respectively as claimant and respondent in secs. 655.04 and 655.001(2) and (13). Hence, it is apparent that the statutes mandate no requirement that the Fund be named in the proceedings before the patients compensation panel. Moreover, it is clear that the Fund under sec. 655.27 is the excess insurer for a health care provider who is found to have committed an act of malpractice. The liability of an excess insurer is derivative and depends upon the liability of the insured. There was no necessity under sec. 655.19 to join the Fund within one hundred twenty days of the time of the panel's decision. Whether or not joinder was appropriate under the rules of civil procedure is not at issue in this case. Plaintiff's suit against neither the Fund nor the insurer is barred by sec. 655.19.

In summary, then, we hold that there is no conflict between secs. 655.04(6) and 655.19. Each statute must

be complied with. We hold that the statute of limitations for a course of negligent medical treatment accrues at the time of the last act of negligence that was a part of a continuum of malpractice, and that in the circumstances stated here there is but a single cause of action that encompasses the entire course of malpractice, and suit was timely brought. We hold that the Patients Compensation Fund and the insurer were properly joined as defendants in the circuit court action, although they had not been made parties to the controversy before the panel. We hold that the suit against the Patients Compensation Fund was not barred by sec. 655.19, although the amended complaint naming the Fund as a defendant was not served until more than one hundred twenty days after the panel decision.

The decision of the court of appeals is reversed. The cause is remanded to the circuit court with directions to vacate the summary judgment dismissing the plaintiff's complaint and for further proceedings.

We note that the petitioner's attorneys, on page 8 of their reply brief, cite and quote from an unpublished opinion of the court of appeals in violation of Rule 809.23 (3). The rule provides:

"An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case."

As the Judicial Council's comments to the rule reveal, the noncitation rule is essential to the reduction of the overwhelming number of published opinions and is a necessary adjunct to economical appellate court administration. Accordingly, violations of the noncitation rule will not be tolerated. Under Rule 809.83 (2), we deem the imposition of a penalty of $50 upon the attorneys for the

petitioners to be appropriate and direct that such sum be paid by them to the clerk of this court within twenty (20) days of the date of this opinion.

*By the Court.*—Decision of court of appeals reversed; cause remanded with directions.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* As I read the lines of the majority's opinion and as I read between those lines, it is clear to me that the majority has adopted the continuous treatment rule. The majority attempts to avoid adopting the rule in this case by distinguishing essentially indistinguishable cases which adopt the continuous treatment rule.