Linda MUGGLEWORTH, as Executrix
for the Estate of Barbara Jane
McBride, Plaintiff,

v.

James FIERRO, D.O.; Anthony Alfieri,
D.O.; Delaware Cardiovascular Asso-
ciates; and St. Francis Hospital;, De-
fendants.

C.A. No. 03C–07–250 SCD.

Superior Court of Delaware,
New Castle County.

Submitted: May 2, 2005.
Decided: May 12, 2005.

David R. Anderson, Sr., Esquire, Townsend, Delaware and Gary R. Katz, Esquire, West Chester, Pennsylvania, Attorneys for Plaintiffs.

Jeffrey M. Austin, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware, Attorney for Defendant Fierro.

Gilbert F. Shelsby, Jr., Esquire, Morgan Shelsby & Leoni, Newark, Delaware, Attorney for Defendant Delaware Cardiovascular Associates.

## OPINION

DEL PESCO, J.

This is a wrongful death claim, stating as its sole cause of action against defendant his continuous negligent medical treatment of decedent. The issue is when the statute of limitations commenced to run on the decedent's claim against defendant, who had treated her for nearly a decade. The statute began running when decedent received treatment for a previously undiagnosed heart condition at an emergency room. Although she returned to the care of the same physician, applying an objective standard, she is charged as of the date of that visit with knowing, or in the exercise of reasonable diligence, able to ascertain that defendant failed to diagnose and treat her heart condition. The commencement of a lawsuit against the physician more than two years after the emergency room visit is barred by the statute of limitations.

### Summary of the Facts

Plaintiff alleges medical negligence in the care of her mother, decedent, Barbara McBride ("McBride or decedent"). McBride was a patient of James Fierro, D.O. ("Fierro"), a primary care physician. It is alleged that commencing in 1999, Fierro was negligent in failing to recognize and treat decedent's cardiovascular disease which failure was a cause of her death on August 19, 2001.

The record reveals that Fierro sent McBride to Anthony Alfieri, D.O. ("Alfieri") and Delaware Cardiovascular Associates in March 1999 for a consultation related to McBride's light-headedness, headaches, chronic cough, and congestion. Alfieri concluded that McBride was not suffering from cardiovascular disease at that time. McBride again complained to Fierro in April 1999 of cough and congestion, but no further work-up was done by Fierro. She also complained of left thoracic pain, lightheadedness and dizziness in September 2000, after a fall at work. Further testing was done, including a referral to cardiology for a tilt test, based on the recommendation of a neurologist. Dr. Fierro saw McBride again in May, 2001. His diagnosis at that time was vertigo.

On July 22, 2001, McBride went to the St. Francis Hospital emergency room with complaints of cough, shortness of breath when lying flat, and swelling of her feet

and ankles. She was examined, and a chest x-ray was taken. She was discharged with a diagnosis of congestive heart failure. The discharge sheet, which she signed to acknowledge receipt, informed her that a common cause of congestive heart failure was damaged heart tissue that can occur over time from coronary artery disease. She was treated for the congestive heart failure with appropriate medications.

McBride contacted Fierro's office on July 23, 2001. Fierro made an appointment for her to be seen on July 24th by a cardiologist. She contacted Fierro's office on July 25 to inform him that she had received medication for dizziness and was scheduled for a stress test the following Monday, July 30, 2001.

On August 1, 2001, McBride called Fierro's office complaining of cough and congestion as well as fatigue. Fierro was out of town; his office staff instructed her to go to Silverside Medical Aid, which acted as his back-up for office visits when he was out of town. The decedent refused to go and an appointment was made for Fierro to see her in his office upon his return.

On August 13, 2001, Fierro saw McBride in his office. He immediately sent her to St. Francis Hospital where she was admitted with symptoms of congestive heart failure, anemia, edema, diabetes, chronic cough, and congestion. After consultation with several specialists, Fierro discharged her from St. Francis Hospital on August 18, 2001. She died on August 19, 2001 of a myocardial infarction. An autopsy revealed the presence of coronary artery disease.

This lawsuit was filed against Fierro, Anthony Alfieri, D.O., a cardiologist; Delaware Cardiovascular Associates, the employer of Alfieri and a second cardiologist, Dr. Alexander Vigh, who apparently treated the decedent after her emergency room visit (Dr. Vigh was not sued individually), and St. Francis Hospital. St. Francis Hospital and Alfieri have previously been dismissed from the action.

### Fierro's Contentions

Fierro argues that plaintiff's claim, based on the continuous negligent treatment doctrine, is barred by the two-year statute of limitations applicable to medical malpractice claims pursuant to 18 *Del C.* § 6856. **Suit was filed on July 31, 2003,** beyond the two-year limitations period which commenced when McBride received the diagnosis of congestive heart failure on July 22, 2001.

### Plaintiff's Contentions

Plaintiff counters that the diagnosis of "possible congestive heart failure" that McBride received upon discharge from St. Francis Hospital was not a diagnosis of coronary artery disease. Coronary artery disease is only one of many possible causes of congestive heart failure. Fierro's negligence continued beyond the date of the Emergency Room treatment, in that he failed to determine whether McBride's heart failure was in fact caused by coronary artery disease.

Plaintiff also argued at oral argument that an emergency room visit was not an "independent medical consultation" sufficient to trigger the running of the statute of limitations which was not triggered until the decedent's coronary artery disease was diagnosed on August 17, 2001, two days before her death. Consequently, plaintiff's claim is not time-barred.

### Legal Standard

■ The court will grant summary judgment only if there are no genuine issues of material fact "and the moving party must show he is entitled to judgment

as a matter of law."[1] In determining whether there is a genuine issue of material fact, the evidence must be viewed in a light most favorable to the non-moving party.[2]

### Discussion

■ The statute of limitations applicable to claims of medical negligence provides:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred; . . .[3]

In order to apply the statute under circumstances when there has been a period of allegedly injurious treatment, Delaware has adopted the cause of action of continuum of negligent medical treatment.[4] "When there is a continuum of negligent medical care related to a *single condition* occasioned by negligence, the plaintiff has but one cause of action—for continuing negligent medical treatment. If any act of medical negligence within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split the cause of action but may bring suit for the consequence of the entire course of conduct."[5] The statute of limitations runs from the date of the last act in the negligent continuum.[6] When address-

ing the difficult question that arises where the patient knows or in the exercise of reasonable diligence could have discovered that a cause of action exists and continues to treat with the physician, guidance has been provided:

Today we hold, that when the cause of action is for continuous negligent medical treatment, the "date upon which such injury occurred" is the last act in the negligent medical continuum. Therefore, if a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum, the statute of limitations begins to run for two years from the last act in the negligent continuum *prior* to the point in time when the plaintiff has actual knowledge of the negligent course of treatment or in the exercise of reasonable diligence could have discovered the negligent course of treatment.[7]

At oral argument, plaintiff's counsel acknowledged that she is asserting a cause of action for continuous negligent medical treatment. That being the case, the analysis requires a determination of whether the decedent knew or, in the exercise of reasonable diligence, could have discovered the negligent treatment. In conducting that analysis, the Supreme Court has directed:

In determining whether a patient had knowledge of a negligent course of medi-

---

1. Superior Court Civil Rule 56(c); *Deakyne v. Selective Ins. Co.*, 728 A.2d 569, 570 (Del.Super.1997) (internal citation omitted).

2. *Moore v. Sizemore*, 405 A.2d 679 (Del.1979), see also *Guy v. Judicial Nominating Com'n*, 659 A.2d 777, 780 (Del.Super.1995); *Figgs v. Bellevue Holding Co.*, 652 A.2d 1084, 1087 (Del.Super.1994).

3. 18 *Del. C.* § 6856.

4. *Ewing v. Beck*, 520 A.2d 653, 664 (Del. 1987).

5. *Id.* at 662 (*citing Tamminen v. Aetna Cas. & Sur. Co.*, 109 Wis.2d 536, 327 N.W.2d 55 (1982)).

6. *Id.*

7. *Id.* at 663.

cal treatment which would commence the running of the two year statute, this Court adopts an objective test, i.e. the reasonably prudent person. However, we also hold that there shall be a presumption that a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on the date of the consultation with the independent health care provider. If a patient receives independent medical advice from a skilled health care provider in the form of a second opinion or consultation, that patient has a duty of inquiry not only about his condition but about his prior course of medical treatment.[8]

In applying the law to the facts of this case, there is a two part inquiry: first, what is the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment; and second, what is the date of the "last act" in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment. Both tests are objective.[9]

As to the first question, the presumption in *Ewing* applies. The plaintiff had notice of the fact that she had a significant heart condition on the day she went to the emergency room, received the diagnosis of possible congestive heart failure, and was given medication associated with that diagnosis.

Plaintiff's argument that an emergency room diagnosis is insufficient to be considered an independent medical consultation is rejected. There is no factual basis to doubt the independence of the medical treatment provided at St. Francis. Courts in at least two prior Delaware cases used a diagnosis at an emergency room visit to set the date when plaintiff knew or should have known of the negligent treatment.[10]

The last act in the negligent continuum of treatment was Fierro's treatment immediately prior to the emergency room visit. And that treatment was more than two years prior to the commencement of this lawsuit on July 31, 2003.

*Conclusion*

The statute of limitations for Fierro's negligence began to run no later than July 22, 2001. Plaintiff's suit, filed July 31, 2003, is time-barred as it was filed more than two years later. Fierro's Motion for Summary Judgment Pursuant to Superior Court Civil Rule 56 is GRANTED.

8. *Id.* at 664.

9. *Meekins v. Barnes,* 745 A.2d 893, 899 (Del. 2000).

10. *See Mitchell v. Gallaher,* 1991 WL 215661 at *2 (Del.Super.); *and Carroll v. Mohiuddin,* 1988 WL 146534 at *3 (Del.Super.).